GIBSON *v.* ELLER, Executrix, and Others.

A sale and conveyance of land, with the agreement that the vendor should hold possession and use the property until the vendee sold it, covenanting

to then give up the premises in as good repair as when the vendee purchased them, upon the payment of a balance of the purchase-money, was held to be absolute; and the agreement was held to be, in effect, a mortgage to secure the balance of the purchase-money.

The failure of the vendee, in such case, to pay the purchase-money within a reasonable time, would authorize a foreclosure against him.

And where damage to an amount equal to the purchase-money due, occurs to premises so held by a vendor, through his negligence or misconduct, the vendee may have an accounting with the vendor, and have his title quieted, without alleging a tender of the purchase-money. It will be sufficient if the complaint contain an offer to pay what may be found due the vendor.

Where buildings upon premises so held by a vendor, are destroyed by fire, through his negligence or misconduct, he must rebuild them; otherwise the vendee will be entitled to a deduction from the purchase-money of an amount equal to the cost of rebuilding.

APPEAL from the *St. Joseph* Circuit Court.

DAVISON, J.—This was an action instituted in the Circuit Court by *Gibson*, the appellant. The appellees, who were the defendants, demurred to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. Their demurrer was sustained, and final judgment accordingly rendered, &c.

The following is the case made by the complaint:

*Jacob Eller*, in his lifetime, owned forty acres of land in *St. Joseph* county, upon which there was a large two-story building and outhouses, &c. These buildings were occupied by *Eller* and his family as a country tavern, were of more than three-fourths the value of the whole premises, and were insured in the name and for the benefit of *Eller*, to the amount of 1,200 dollars, in the *Jackson Insurance Company.*

On the 8th of *September*, 1851, *Eller*, for the consideration of 1,500 dollars, to be paid at a future day, sold, and, by deed in fee simple, conveyed the same land to *Gibson*. In reference to the sale and conveyance thus made, the parties, at the above date, entered into a written agreement, whereby it is stipulated that *Eller* should have the use of the property until *Gibson* sold it; then *Gibson* was to pay the said 1,500 dollars, and immediately thereupon *Eller* should give up possession of the premises in as good condition as the same then were, natural wear excepted.

*Eller* was to pay all the taxes and insurance, till *Gibson* should make sale of the property, and having made such sale, he was to assume or discharge *Eller's* liability to the insurance company. *Eller* was to be permitted to use, occupy, or rent the premises, until *Gibson* should sell them, and no longer, and for that reason, was to receive no interest on the 1,500 dollars. And further, it was declared that the agreement itself should operate as a mortgage on the premises for the purpose of securing the purchase-money. *Eller* continued, under this agreement, to occupy the premises until the buildings, through his carelessness, negligence, and misconduct, were destroyed by fire. They have never been rebuilt; and he has recovered a judgment in the *St. Joseph* Circuit Court, upon said policy of insurance, for the loss occasioned by their destruction. In *January*, 1856, *Gibson*, the plaintiff, sold and conveyed the property to one *John Ruple;* but cannot recover the purchase-money until he delivers to the vendee possession of the premises free from the incumbrance of the mortgage. Plaintiff has requested *Eller*, in his lifetime, and the defendants, since his death, to put the premises in as good repair as they were in when he, plaintiff, bought them, and to deliver possession thereof on receiving the 1,500 dollars, or to come to an account with the plaintiff and ascertain what, if anything, was due, after deducting the amount required to replace the buildings. It is averred that these requests have been refused, and that after deducting the amount necessary to rebuild and place the premises in repair, &c., there is nothing due to the defendants.

The prayer is, that the defendants may be compelled to account with the plaintiff respecting the premises, and if anything is found due upon the mortgage, that he may redeem; that the mortgage, if nothing be found due, be canceled, and the defendants compelled to deliver up possession of the premises, &c.; and for general relief, &c.

The appellees, in support of the demurrer, argue thus: "The arrangement, taken together, amounted, at most, to a written proposition by *Eller* to sell the land to *Gibson* at a fixed price. *Gibson* held the land in trust for *Eller*,

and had no further interest than a right to buy it if he saw fit. Had a time been named within which he was bound to exercise his option, the contract would have been at an end within the expiration of that time. As no such time was fixed by the parties, the law fixes a reasonable time. The contract was entered into *September* 8, 1851, and *Gibson* sold to *Ruple*, in *January*, 1856. He had thus slept on his rights, whatever they were, for more than five years, which was an unreasonable delay."

This reasoning seems to be incorrect. There was an unconditional sale and conveyance of the land to *Gibson;* and the agreement was, in effect, what the parties intended —a mortgage to secure the payment of the purchase-money—though it stipulated that the vendor should hold possession and use the property, until the vendee sold it. Suppose, then, the delay attributed to the vendee to have been unreasonable, still it would not affect his title. Had the contract of sale remained executory, the result might have been different; but as the case stands, his failure to comply with the agreement within a reasonable time, would have simply authorized a foreclosure against him.

The appellees assume another ground. They insist that the complaint is defective, because it fails to allege a tender of the purchase-money. This position does not strictly apply to the case before us. The demurrer admits that the buildings were destroyed through the carelessness, negligence, and misconduct of the vendor; and that, after deducting the amount necessary to rebuild and put the premises in repair, &c., there would be nothing due to the defendants. Now if the facts thus admitted are well pleaded, they will entitle the vendee to an account with the defendants, and to have his title quieted, without alleging a tender of the purchase-money; because, there being nothing due, a tender could not be deemed an essential element in the case. The complaint, however, does contain an offer to pay such sum as may be found due, &c., and that, in view of the case which it makes, is, no doubt, sufficient. 2 Hill. on Mort. 153.— *Green* v. *Tanner*, 8 Met. 411.— *Stapp* v. *Phelps*, 7 Dana, 300.

But the main question to settle is, was the vendor bound to replace the buildings? If he was, he having failed to do so, the plaintiff has evidently a right in this action to have a deduction from the purchase-money of an amount equal to the cost of rebuilding. ' The agreement stipulates that *Eller* was to have the use of the property until *Gibson* sold it. Then *Gibson* was to pay the 1,500 dollars; and immediately thereupon, *Eller* should give up possession of the premises in as good a condition as the same were then in, natural wear excepted. This stipulation, literally construed, would bind the vendor—the buildings having been destroyed while in his possession—to rebuild them; but it is insisted that such a construction would not meet the intent of the parties, as manifested by looking into the whole instrument, and that in the absence of an express covenant to repair, the vendor was not bound to put up new buildings in place of those destroyed. This construction would be correct in its application to the case before us, had the buildings been consumed accidentally; but here, it is averred in the complaint, and admitted by the demurrer, that they were burnt down through the carelessness, negligence, and misconduct of the vendor.

We are referred to *Warner* v. *Hutchins*, 5 Barb. 666, which was covenant upon a lease. There, the lessee agreed to surrender up the premises at the expiration of the term, in as good a condition as they were in at the date of the lease, natural wear excepted. While in the lessee's possession, the buildings on the premises were destroyed by accidental fire. *Held*, there being no covenant to repair or rebuild, that the lessee was not bound to replace the buildings. This decision, it will be seen, is not an available authority; because, in the case at bar, the destruction of the buildings was not the result of accident. In *Warner* v. *Hutchins*, *supra*, the Court, in their opinion, say: "The stipulation to repair is the proper one, where the lessee assumes to keep and make the premises good, from whatever cause the injury may arise, whether from unavoidable accident or negligence. And the covenant to surrender in the same condition, is adopted when the object is to secure

the utmost care and diligence of the lessee, in protecting and preserving the property." The exposition thus made, is sustained by authority, and when applied in the construction of the agreement before us, decides the case against the defendants; because the record plainly shows that the destruction of the buildings was occasioned not only by want of care and diligence on the part of the vendor, but through his misconduct. *Cook* v. *The Champlain, &c., Co.,* 1 Denio, 91.—*Maggart* v. *Hansbarger,* 8 Leigh, 532.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*A. G. Deavitt* and *J. A. Liston,* for the appellant.