## CARVER *v.* LOUTHAIN.

DEED.—*Covenant of Warranty.*—*Statute.*—Deeds made in conformity to section 12 of the act concerning real property and the alienation thereof have the force and effect of those containing the special covenants of warranty that are usually contained in the common law deeds of conveyance, and all the covenants mentioned in said section are to be regarded and treated as though they were written in the deed.

SAME.—*Parol Evidence.*—*Covenant Against Incumbrance.*—It is competent for a vendor of real estate, in a suit against him for a breach of a covenant against incumbrances, where the breach alleged is, that the lands were incumbered with taxes, which the vendee has been required to pay, to prove by parol that the vendee, in part consideration of the purchase of such real estate, agreed to pay all the taxes that were upon the land at the time of the sale.

SAME.—*Stare Decisis.*—The foregoing proposition has become a rule of property in this State, and the question should be regarded as settled and put at rest.

EVIDENCE.—*Motion to Strike Out.*—If any portion of the evidence embraced in a motion to strike out evidence is admissible, the motion should be overruled.

SAME.—*Offer to Compromise.*—A conversation between the defendant and the agent of the plaintiff, in such a case, wherein the defendant denied that he owed the plaintiff, and refused to pay him anything, but said it would be all right if the costs should be paid; and in which the plaintiff's agent urged a settlement, and offered to take a less sum than the amount claimed, if the de-

Carver *v.* Louthain.

fendant would pay the costs, it was *held,* was not an offer to compromise, and evidence thereof given by the defendant should not be struck out on plaintiff's motion.

EVIDENCE.—*Depositions.*—*Oral Testimony.*—The testimony of a witness given in open court, in the presence of the opposite party and the other witnesses, and where the witness is subjected to a thorough cross examination, and where the court or jury have the opportunity of observing the manner, appearance and conduct of the witness, is entitled to greater weight than the evidence of a witness embodied in a deposition, taken in private, and remote from the court and jury, and where all the ordinary tests of truth cannot be applied.

INSTRUCTIONS.—*Credibility of Witnesses.*—In instructing a jury as to the tests of the credibility of witnesses, it is not error to say, that "an interested witness will not usually be as honest and candid as one not so."

APPEAL from the Cass Common Pleas.

BUSKIRK, C. J.—This was an action by the appellant against the appellee, to recover damages for the alleged breach of a covenant against incumbrances in a deed from the appellee to the appellant, for certain lands in the State of Illinois.

It is alleged in the complaint that at the time of the execution of the deed, the lands were encumbered with certain taxes; that the lands were sold for such taxes; that the plaintiff had been compelled to pay the sum of four hundred dollars to redeem the same. There was filed with the complaint copies of the deed and several certificates of redemption.

The appellee answered in four paragraphs; the first was the general denial; the second was a plea of payment; the third set up special matter in avoidance of a portion of appellant's claim; and the fourth set up a parol contract made concurrently with the execution of the deed, and as constituting a part of the consideration of the purchase, that the appellant should pay the taxes due upon the lands at the time of such conveyance.

The appellant demurred to the third and fourth paragraphs of the answer. The demurrer was sustained as to the third and overruled as to the fourth, to which rulings proper exceptions were taken.

The appellant replied by a denial of the second and fourth

Carver *v.* Louthain.

paragraphs of the answer. The cause was submitted to a jury for trial, and resulted in a finding for the appellee. The court overruled appellant's motion for a new trial, and rendered final judgment for the appellee, to which ruling the appellant excepted.

The appellant has assigned the following errors: first, the court erred in overruling the demurrer to the fourth paragraph of the answer; second, the court erred in permitting the appellee to introduce parol evidence to contradict the express terms of the deed; third, the court erred in giving instruction No. 2 to the jury; fourth, the court erred in allowing the witnesses, Wm. P. Louthain, Vincent Louthain, and Mollie Shell, to testify to conversations had at the time the contract of sale was executed, eight or ten days before the deed was made; fifth, the court erred in admitting in evidence conversations had pending the negotiations of sale and leading to it; sixth, the court erred in admitting in evidence conversations had at the time the contract of sale was made, when the evidence showed that they were reduced to writing; seventh, the court erred in admitting evidence of a written contract, because at variance with the pleadings; eighth, the court erred in admitting evidence at variance with the pleadings; ninth, the court erred in allowing secondary evidence of the contents of the articles of agreement, made eight or ten days before the deed, when it was not produced, nor its loss proved, nor any search made for it; tenth, the court erred in admitting evidence of the contents of the contract without proof of its loss; eleventh, the court erred in overruling motion to strike out evidence of an offer to compromise; twelfth, the court erred in overruling motion to strike out evidence of contents of article of agreement; thirteenth, the court erred in permitting witness Wm. P. Louthain to state his conclusions instead of facts; fourteenth, the court erred in the admission of improper, irrelevant, and immaterial evidence on the trial; fifteenth, the court erred in its instructions to the jury; sixteenth, the court erred in overruling appellant's motion for a new trial.

The errors assigned, except the first and sixteenth, are but repetitions of the reasons assigned for a new trial, and are embraced in the refusal of the court to grant a new trial; but for convenience we treat them as valid assignments of error.

The principal question in the cause is, whether it was competent for the appellee to allege and prove by parol, that the appellant, in part consideration of the purchase of the lands described in the complaint, had agreed to pay all the taxes that were upon said lands at the time of the sale thereof; and this question arises on the overruling of the demurrer to the fourth paragraph of the answer, the admission of evidence, the giving of the second instruction, and the overruling of the motion for a new trial. The decision of the question raised upon the overruling of the demurrer to the fourth paragraph of the answer will dispose of the first, second, third, fourth, fifth, sixth, seventh, eighth, and fourteenth assignments of error.

It is claimed by the appellant that the court below erred in overruling his demurrer to the fourth paragraph of the answer; that as the deed upon which the suit was brought contained special covenants of warranty, and in express terms covenanted against taxes, liens, assessments, etc., the appellee could not set up a parol contract made at the time or before, to contradict the terms of the deed.

It is maintained by the appellee that it is well settled by repeated decisions in this court, which have become a rule of property in this State, that "a parol agreement by the vendee to pay taxes which are a lien upon the land, as a part of the consideration of the conveyance, is a good defence to an action on the covenants of the deed." It is further insisted by the appellee, that under our statute every general warranty deed is a deed of special warranty; that under our statute the word "warrant" embraces and includes all the special warranties contained in a common law deed.

It was held by this court, in *Allen* v. *Lee*, 1 Ind. 58, which

was an action upon notes which had been given for real estate, the defence being that there had been a breach of the warranty in the deed against incumbrances, that the plaintiff might prove by parol that the vendee purchased the property with full knowledge of the outstanding lease, and subject thereto. The court say: "A general covenant of warranty does not, at least conclusively, extend to such incumbrances as were known to the purchaser at the time of the contract and which he agreed to pay or discharge himself in addition to or as part of the consideration moving from him to the vendor; and when the question is, as in this case, what was the true consideration paid for the land? we think such facts may be given in evidence without in any manner contradicting the terms of the written warrants."

This court, in *Rockhill* v. *Spraggs*, 9 Ind. 30, after reviewing several cases in Massachusetts and Connecticut, say: "These decisions open the consideration clause in a deed, to the widest possible latitude of proof. They go far to impair the force of the ancient rule, that a written instrument cannot be changed by parol evidence; but the American courts, having generally gone with great unanimity to the extent of admitting evidence of a further consideration in kind, and that a consideration expressed to have been paid, and the grantee therefrom fully released and discharged, was not in fact paid, we do not see any good reason why the proof should be arrested at this point. We hold that the parol evidence was properly admitted, and that the demurrer to the reply was rightly sustained."

This court, in *McMahan* v. *Stewart*, 23 Ind. 590, after reviewing and quoting from several decisions in other states, say: "Whatever construction, however, might be adopted of the instrument in the case now under consideration, in the absence of any averments to aid us, there can be no question in our opinion as to the liability of the appellee, under the allegations of the complaint. The fact that the incumbrances were deducted from the value of the steamboat would clearly bring the case within the full force of the

authorities cited. The additional averment of an express promise to pay, as part of the consideration for the sale of the interest, would seem hardly to leave room to question the liability.

"Nor can it now be insisted that the admission of parol testimony to sustain such averments would be a violation of the rule excluding the introduction of such evidence to contradict the terms of a written instrument."

This court, in *Pitman* v. *Conner*, 27 Ind. 337, which was an action for the breach of covenant against incumbrances in a deed, held that parol evidence was admissible to prove that the appellee agreed, as part of the consideration for the sale and conveyance of the property, that he would discharge the incumbrance in question. The court, after referring to the case of *Allen* v. *Lee, supra*, say: "We regard this as an established rule of property in this State, and could not feel ourselves at liberty to disturb it, upon any question of its soundness. Nor are we satisfied that the rule is wrong in principle."

The case of *Fitzer* v. *Fitzer*, 29 Ind. 468, is directly in point. It was a suit for covenant broken, to recover the amount of taxes paid by the plaintiff upon real estate conveyed by defendant to the plaintiff, being a lien on the land at the time of the conveyance. FRAZER, J., in speaking for the court, says: "The defence was that the plaintiff, in part consideration for the conveyance, agreed by parol to pay the taxes. The evidence was sufficient to establish the truth of the defence, and the jury found accordingly. It was long since held, in this State, that such a defence can be made. *Allen* v. *Lee*, 1 Ind. 58. Though this doctrine is questioned elsewhere, and indeed the very opposite is held in many of the states, yet in *Pitman* v. *Conner*, 27 Ind. 337, where we were urged to reconsider it, we regarded it as a rule of property, so long established in this State that it ought not now to be disturbed. Indeed, I am very well satisfied that it rests upon sound principle, and if the question were an open one, I would not hesitate to decide it the

same way. If the defendant had placed money in the plaintiff's hands to pay the taxes, no one would suppose that an action of covenant could be successful. What is the difference, when so much of the price of the land is left in his hands for the same purpose? In either case, the payment is merely the performance of a valid parol contract, and no court should hesitate so to regard it. To do so is, in my opinion, trifling with justice by the use of technical rules where they have no proper application."

This question again came before this court in *Heavilon* v. *Heavilon,* 29 Ind. 509, and after a full and able discussion of the question, the former rulings were approved of and adhered to.

This court, in *Robinius* v. *Lister,* 30 Ind. 142, held that where, "at the time of the conveyance of land by warranty deed in exchange for other land, it is agreed by the parties that the taxes due upon the lands so mutually exchanged shall be set off against each other, the taxes on the land so conveyed by warranty deed are part of the consideration for such deed, and in an action against the vendor by the vendee, or one deriving title by warranty deed from the vendee, to recover money paid by the plaintiff to remove the incumbrance of the taxes so assumed by the vendee, parol proof of such contract concerning the taxes is admissible."

The rule laid down in *Allen* v. *Lee, supra,* has been adhered to in the following cases: *Medler* v. *Hiatt,* 8 Ind. 171; *Gibson* v. *Eller,* 13 Ind. 124; *Wainscott* v. *Silvers,* 13 Ind. 497; *Lindley* v. *Dakin,* 13 Ind. 388; *Page* v. *Lashley,* 15 Ind. 152; *Lamb* v. *Donovan,* 19 Ind. 40.

This court, as at present constituted, was required to consider and pass upon the question, in the case of *Pea* v. *Pea,* 35 Ind. 387, which involved the validity of a parol reservation in the sale and conveyance of lands, with general warranty, of a portable steam saw-mill situated thereon; and a majority of the court held that the reservation was valid, and that parol evidence was admissi-

ble to prove the contract between the vendor and vendee reserving the same from sale.

The counsel for appellant, in their brief, admit that the rule is well established in this State, and that it has become "a rule of property," that parol evidence was admissible to show that the vendee took the property subject to an incumbrance which he knew existed, but it is maintained that such rule does not apply to the case under consideration, for the reason that the previous decisions of this court were made in reference to deeds containing general covenants of warranty, while in this case the deed contains special covenants of warranty. The deed is in the record, and contains the following covenants of warranty:

"And the said William P. Louthain, party of the first part, for himself, his heirs, executors, and administrators does covenant, grant, bargain, and agree to and with the said party of the second part, his heirs, and assigns, that at the time of the ensealing and delivery of these presents, he is well seized of the premises above conveyed as a good, sure, perfect, absolute, and indefeasible estate of inheritance in law in fee simple, and has good right, and full power, and lawful authority to grant, bargain, sell, and convey the same in manner and form aforesaid, and that the same are free and clear from all and other grants, bargains, sales, liens, taxes, assessments, and encumbrances of what kind or nature soever," etc.

We are of the opinion that the position assumed by counsel is untenable. Section 12 of an act concerning real property and the alienation thereof, approved May 6th, 1852, reads as follows:

"Sec. 12. Any conveyance of lands worded in substance as follows: 'A. B. conveys and warrants to C. D.' [here decribe the premises] 'for the sum of' [here insert the consideration,] the said conveyance being dated and duly signed, sealed and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, with covenant from the grantor for himself and

his heirs and personal representatives, that he is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof; that the same are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims."

Deeds made in conformity to the above section of our statute have the force and effect of the special covenants of warranty that are usually contained in the common law deeds of conveyance.  It is expressly provided by the above section that a deed made in conformity therewith shall contain a covenant that the premises conveyed "are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims."

All the covenants of warranty mentioned in the above section are to be regarded and treated as though they were incorporated in the deed.  They constitute a part of the deed as though they were written therein.  The special covenants contained in the deed under consideration have no more force or legal effect in this State than the general covenants of warranty, as contained in the deeds provided for by our statute.

We are quite well aware that the opposite doctrine prevails in many of the states, but the decisions of this court are supported by the decisions of several of the states.  We refer to the following cases that maintain the rule of decision adopted in this State: *Welsh* v. *Foster,* 12 Mass. 93; *Gale* v. *Coburn,* 18 Pick. 397; *Brewer* v. *Hardy,* 22 Pick. 376; *Townsend* v. *Ward,* 27 Conn. 610; *Thompson* v. *Thompson,* 13 Ohio St. 356; *Schermerhorn* v. *Vanderheyden,* 1 Johns. 139; *Maigley* v. *Hauer,* 7 Johns. 341; *M'Crea* v. *Purmort,* 16 Wend. 460; *Bingham* v. *Weiderwax,* 1 Comst. 509; *Murray* v. *Smith,* 1 Duer, 412; *Watts* v. *Welman,* 2 N. H. 458.

The question is again presented whether we shall adhere to the former decisions of this court, or overrule them.  The propriety and justice of the doctrine of *stare decisis* is stated with great force and marked ability by this court in the case of *Harrow* v. *Myers,* 29 Ind. 469, where it is said: "The ques-

Carver *v.* Louthain.

tion at the threshold is, whether a rule of property thus repeatedly declared by the court of last resort, after earnest contest, and, it must be supposed, upon the most careful deliberation, should be deemed open to further controversy. The repose of titles is important to the public. Upon the faith of these decisions our people have, for a considerable period of years, invested their money in real estate, the titles to which they were thus again and again assured were not liable to be disturbed. There must be a just basis of confidence in the stability of judicial decision, somewhere in the history of a controverted legal question, when it may be confidently relied on that the question is settled. It is not always that the courts may freely inquire, in determining a case before them, what is the law? Sometimes investigation should stop when it is ascertained what has been decided upon the subject. We think that the doctrine of *stare decisis* should be applied to the question now presented."

We have concluded that the doctrine of *stare decisis* should be applied to this question, and that it should be regarded as settled and put at rest.

We are of the opinion that no error was committed by the court in relation to the matters embraced in the first, second, third, fourth, fifth, sixth, seventh, eighth, and fourteenth assignments of error.

The ninth, tenth, and twelfth assignments of error relate to the same matter. It appears from the evidence that the parties entered into a written executory contract for the sale of the land in controversy, in which it was agreed that the appellant should pay the taxes that were then due upon the farm. Upon the trial, the appellee was permitted, over the objection and exception of the appellant, to state the contents of such instrument, after some proof had been offered of its destruction. It is contended by the appellant that the destruction or loss of the instrument was not sufficiently shown, and that the court erred in admitting secondary evidence of its contents. We are of the opinion that the evi-

dence of Louthain and that of Henry S. Carver, as contained in the answer to the eleventh question in his deposition, very fully and satisfactorily show the destruction of the agreement after the deed was made.

It is next insisted by the appellant that the court erred in admitting in evidence a conversation between the appellee and Henry S. Carver, the son and agent of the appellant. The appellee pleaded that he had paid the appellant the amount of the taxes on the land. He testified that, after the sale and conveyance of the land, he was in Illinois, where he saw the appellant, when a dispute arose as to the contract about the taxes; that he held a note on Henry S. Carver for two hundred and twenty-five dollars, and an account on the appellant for twenty dollars; that, to avoid a difficulty, he had surrendered the note and account, in consideration of the promise of the appellant to pay the taxes, and that he had not seen Henry S. Carver from the time of such settlement until he met him on the steps of the court-house in Logansport, when a conversation took place, which he was about to detail, when the appellant objected, on the ground that the appellant was not present at such conversation. The appellee then proved that Henry S. Carver was the agent of the appellant. The objection was then overruled, and the appellee testified as follows:

"I saw the young man at the court-house; he said, 'Pres, what are you going to do about this suit?' I said that I was going to do the best I could; that I had paid him every cent of this claim; I then started home; corner of lot, he said, 'Pres, had we not better settle this?' I said, 'If you will go to the court-house and pay the costs, it will be all right with me.' He said, 'If you will give me fifty dollars and pay the costs, I will draw the suit.' I told him I did not owe him a cent, and would not give him a cent."

The following entry then appears in the bill of exceptions: "(Plaintiff moved to strike out this evidence because it was offer of compromise, and not legitimate evidence. Motion overruled, excepted.)"

Did the court err in overruling the motion to strike out the above evidence? We think the ruling of the court was correct. The motion of the appellant embraced all the evidence above set out. The evidence was all competent, unless the offer of young Carver to take fifty dollars and draw the suit, if appellee would pay the costs, was improperly admitted. If the motion to strike out had been limited to that portion, a very different question would be presented. There was no offer to compromise in the conversation on the court-house steps, and that evidence was clearly admissible, and the motion to strike it all out was properly overruled. As to the competency of such evidence, see *Murray* v. *Coster*, 4 Cowen, 617; *Marsh* v. *Gold*, 2 Pick. 285; *Harrington* v. *Inhabitants of Lincoln*, 4 Gray, 563; *Snow* v. *Batchelder*, 8 Cush. 513; *Pattison* v. *Norris*, 29 Ind. 165.

If any portion of the evidence embraced in the motion to strike out was admissible, the motion was properly overruled. We think the court committed no error in overruling the motion to strike out.

It is next maintained that the court erred in giving the second, ninth, and eleventh instructions to the jury. We have already disposed of the second instruction. The ninth and eleventh are so intimately connected with other instructions that they would not be fully understood by themselves. We, therefore, set out the fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth, as they all relate to the same subject, the credibility of the witnesses.

"Fourth. If the jury find there is a conflict in the testimony upon the subject of this agreement, it is the duty of the jury, from which you cannot escape, to reconcile that conflict. You are not, however, to compel an agreement between the two antagonistic statements of the opposing witnesses, but you are simply to choose between the witnesses, setting aside the declarations of those whom you choose not to believe, and retaining as the truth, the testimony of those witnesses who are entitled, under the rules, to your confidence.

"Fifth. You should reconcile the conflict, if you can, without concluding against the integrity of a witness, that is to say, that if, for example, you choose to disbelieve Louthain rather than Carver, or *vice versa*, you should do so, if you can, on the ground that the witness was mistaken, and that the false statement was not intended.

"Sixth. Still, if a reconciliation is impossible without setting aside the statements of some of the witnesses on the ground that they have wilfully perjured themselves, it is, nevertheless, incumbent on you to make a choice, to harmonize the testimony, even if it be at the expense of concluding against the honesty of the witnesses on one side or the other.

"Seventh. If a witness has deliberately perjured himself on one point, it is fair to infer that his entire statement is false, and should be wholly disregarded; but if a witness has been simply mistaken, his statement is good, except so far as the mistake goes.

"Eighth. The credit of witnesses depends upon two things, viz.: first, their ability; second, their integrity—their ability for knowing what occured, and their disposition for telling the truth as it occurred. The statements of witnesses having superior opportunities, intelligence, and memory, which make up the ability, other things being equal, are entitled first to the confidence of the jury.

"Ninth. The integrity of the witnesses may be determined by the application of the legal tests of truth, which are, first, the manner of the witness on the stand. This test of course cannot be applied to those who are absent, and whose statements are conveyed to the jury by means of depositions. This circumstance should be remembered in weighing the credibility of conflicting witnesses, because statements thus made, remote from the court, and in the absence of that public examination to which the witness is subjected at trial, when confronted in the presence of the court by opposing witnesses and counsel, are not entitled to the same confidence that those statements are which have

successfully passed such an ordeal. I say successfully, because if the testimony of a witness present at the trial has not withstood the tests of truth it should be disregarded. Excepted to by plaintiff. McConnell and Winfield, for plaintiff.

"Tenth. The marks of an insincere witness are always readily seen in his manner of delivering his statements; and, on the other hand, the honest, fair, and candid story is always accompanied with such unmistakable evidence of sincerity, that a jury of sensible men, of experience among men, will readily recognize and act upon them.

"Eleventh. Another test is, the interest of the witness in the event of the suit. An interested witness will not, usually, be as honest and candid as one not so. Excepted to by plaintiff.

"Twelfth. Another is the agreement or non-agreement of the witness's statements with the established facts in the case, and that common experience which commends itself to every man whose judgment is matured, and expressed by a life in the midst of the affairs of the world.

"Thirteenth. The jury should carefully apply the above tests, for the purpose of settling the conflict, if any exists, upon the subject of the agreement of Carver to pay the taxes. If you conclude in favor of Louthain, you should find for the defendant. If, however, you conclude that Carver made no such agreement, you should find for Carver the amount of his claim, unless you are satisfied that Louthain has fully paid and satisfied that claim.

"Fourteenth. If there is a conflict among the witnesses upon the point of Louthain's payment, you are to solve the difficulty by the application of the tests already given you."

Did the court err in giving the ninth and eleventh instructions in connection with the others bearing upon the same subject? We have been unable to find any case where the principle enunciated in the ninth instruction has been involved and decided, and our decision will, therefore, have to be based upon reason and principle. The real question

presented is, whether the testimony of a witness, given in open court, in the presence of the opposite party and the other witnesses in the cause, and where the witness is subjected to a thorough cross examination, and where the court or jury trying the case has had the opportunity of observing the manner, appearance, and conduct of the witness, is entitled to greater weight than the evidence of a witness embodied in a deposition which was taken in private, remote from the court and jury, and where all the ordinary tests of truth cannot be applied.

The practice of taking depositions was borrowed from the civil law. Under the civil law, and when depositions were first introduced into England, they were taken privately. The opposite party was not allowed to be present, but might submit interrogatories to be answered, but this had to be done without knowing what had been testified to. This practice was found to work badly, and was changed, so that the examination was not private, as the opposite party was allowed to be present and was permitted to read the questions and answers and submit such interrogatories as would be competent upon a cross examination in open court. Depositions were not formerly admitted in the common law courts, but were exclusively used in the courts of chancery, which were generally the only evidence that was allowed. Depositions were admitted in evidence in the common law courts from necessity, where the oral testimony of witnesses could not be obtained. See 3 Bac. Ab. 560; Bouv. Law Dict., title, Depositions.

Formerly, depositions were never admitted in criminal cases, and are only admitted now with the consent of the accused. 3 Greenl. Ev., sec. 11; *McLane* v. *The State of Georgia*, 4 Ga. 335.

The constitution of the United States provides, that in all criminal prosecutions, "the accused shall enjoy the right to be confronted with the witnesses against him." Amendments of the Const., art. 6.

It is provided by section 13 of article 1 of our state con-

stitution, that "in all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offence shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." 1 G. & H. 28.

Similar provisions will be found in the constitutions or statutes of the most of the states. Under our statute, depositions are only used as a substitute for oral testimony when the witnesses cannot be produced in court. They can only be used in the following cases: first, where the witness does not reside in the county or adjoining county to the one in which the trial is to be held, or is absent from the State; second, when the deponent is so aged, infirm, or sick as not to be able to attend the court, or other place of trial, or is dead; third, when the depositions have been taken by the agreement of the parties, or by the order of the court trying the cause; fourth, when the deponent is a state or county officer, or a judge, or practicing physician, or attorney at law, and the trial is to be had in a county in which the deponent does not reside. 2 G. & H. 175.

Depositions in a criminal case can only be taken where the accused has entered his consent upon record. 2 G. & H. 411, sec. 92.

Starkie on Evidence says: "As the depositions of dead or absent witnesses are, in point of law, of a secondary nature to the *viva voce* testimony of witnesses subjected to the ordeal of cross examination, so are they inferior and weaker in point of force and effect. So true is it, that a witness will frequently depose that in private, which he would be ashamed to certify before a public tribunal. It is by the test of a public examination, and by that alone, that the credit of a witness, both as to honesty and ability, can be thoroughly tried and appreciated." Sharswood's Starkie, 767.

Lord BACON says: "Now, since this practice has been used, no doubt, but that the credit of depositions *cæteris paribus* falls much below the credibility of a present examination *viva voce*, for the examiners and commissioners in such cases often dress up secret examinations, and give a quite different air to them from what they would have, if the same testimony had been plainly delivered under the strict and open examination of the judge at the assizes." 3 Bac. Ab. 560.

Greenleaf says: "But in all cases at law where a deposition is offered as secondary evidence, that is, as a substitute for the testimony of the witnesses *viva voce*, it must appear that the witness cannot be produced, unless the case is provided for by statute, or by a rule of court."

The long established and firmly adhered to practice of this court, not to reverse a case upon the weight of evidence, is founded mainly upon the fact that the court and jury below had the opportunity of applying the tests of truth to witnesses who are examined before them, which we have not. The rule does not apply where the evidence below was all written, for then we are as competent to judge of the credibility of the witnesses, and determine the weight which should be given to the evidence as was the court or jury below. The reason of this rule is founded in wisdom, and is supported by the experience of all who have been engaged in the administration of justice. It is supported by the highest authority. The duty of judges and the mode of testing the truth or falsity of witnesses are very clearly stated in the Bible. The 16th, 17th, 18th, 19th, and 20th verses of the 19th chapter of Deuteronomy read as follows:

"16. If a false witness rise up against any man to testify against him that which is wrong;

"17. Then both the men between whom the controversy is shall stand before the Lord, before the priests and the judges, which shall be in those days;

"18. And the judges shall make diligent inquisition: and behold, if the witness be a false witness, and hath testified falsely against his brother;

"19. Then shall ye do unto him, as he had thought to have done unto his brother: so shalt thou put the evil away from among you.

"20. And those which remain shall hear, and fear, and shall henceforth commit no more any such evil among you."

The judges are required to make inquisition. The word "inquisition" is defined by Webster to be "the act of inquiring; inquiry; examination; investigation."

It is quite obvious that the divine law-giver attached much importance to the appearance and manner of the witness. The conduct of the witness while testifying was evidently regarded as the surest means of determining the truth or falsity of the witness.

The means to be adopted by the judges in testing the truth or falsity of witnesses are stated with great clearness, force, and completeness in the Institutes of Hindu Law or the Ordinances of Menu, which are of great antiquity, and are believed by many to be the first compilation of laws which was ever made. Sections 23, 24, 25, and 26 of chapter 8, p. 192, read as follows:

"23. Let the king or his judge, having seated himself on the bench, his body properly clothed and his mind attentively fixed, begin with doing reverence to the deities, who guard the world; and then let him enter on the trial of causes:

"24. Understanding what is expedient or inexpedient, but considering only what is law or not law, let him examine all disputes between parties, in the order of their several classes.

"25. By external signs let him see through the thoughts of men; by their voice, colour, countenance, limbs, eyes, and action:

"26. From the limbs, the look, the motion of the body, the gesticulation, the speech, the changes of the eye and the face, are discovered the internal workings of the mind."

The difference between depositions and oral examinations in open court is well stated by Judge BLACKSTONE, in his Commentaries, where it is said: "This open examination of witnesses, *viva voce*, in the presence of all mankind, is much more conducive to the clearing up of truth than the private and secret examination taken down in writing before an officer, or his clerk, in the ecclesiastical courts, and all others that have borrowed their practice from the civil law; where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal. There an artful or careless scribe may make a witness speak what he never meant, by dressing up his depositions in his own forms and language; but he is here at liberty to correct and explain his meaning, if misunderstood, which he can never do after a written deposition is once taken. Besides, the occasional questions of the judge, the jury, and the counsel, propounded to the witnesses on a sudden, will sift out the truth much better than a formal set of interrogatories previously penned and settled; and the confronting of adverse witnesses is also another opportunity of obtaining a clear discovery, which can never be had upon any other method of trial. Nor is the presence of the judge, during the examination, a matter of small importance: for, besides the respect and awe with which his presence will naturally inspire the witness, he is able, by use and experience, to keep the evidence from wandering from the point in issue. In short, by this method of examination, and this only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behaviour, and inclinations of the witness; in which points all persons must appear alike, when their depositions are reduced to writing, and read to the judge, in the absence of those who made them; and yet as much may be frequently collected from the manner in which the evidence is delivered, as from the matter of it. These are a few of the advantages attending this, the English, way of giving testi-

mony, *ore tenus.* Which was also indeed familiar among the ancient Romans, as may be collected from Quintilian, who lays down very good instructions for examining and cross examining witnesses *viva voce.* And this, or somewhat like it, was continued as low as the time of Hadrian; but the civil law, as it is now modelled, rejects all public examination of witnesses." 3 Bl. Com. 373.

We are of the opinion that the ninth instruction is fully supported by the Divine, the Hindu, the ancient Roman, and the common law, and is sustained by the experience and observation of judges, jurors, and lawyers in all ages and countries.

Nor can we discover any objection to the eleventh instruction. The rule at common law was, and is, that a pecuniary interest in the event of the suit, rendered a witness incompetent, and entirely excluded his evidence, but this rule has been changed by our statute. At common law, interest went to the competency, but under our statute it goes to the credibility of the witness. Sec. 243 of the code, 2 G. & H. 171.

We are of the opinion that the court committed no error in the giving of the instructions complained of.

The remaining error to be considered is based upon the refusal of the court to grant a new trial. The evidence is in the record by a bill of exceptions, and, in our opinion, fully sustains the verdict of the jury.

The judgment is affirmed, with costs.

*S. T. McConnell* and *M. Winfield,* for appellant.

*D. P. Baldwin* and *C. B. Lasselle,* for appellee.