## SCHNULL ET AL. v. CUDDY.

[No. 5,377.   Filed June 22, 1905.   Rehearing denied October 11, 1905.]

1. PLEADING.—*Answer.*—*Striking Out Paragraph When Facts Provable under Another.*—The erroneous striking out of a paragraph of answer whose facts are provable under another paragraph is not reversible error.   p. 263.

2. TRIAL. — *Answers to Interrogatories.* — *Indefiniteness.* — The trial court can not sustain a motion for judgment *non obstante* for a specific sum, when the answers to the interrogatories are indefinite as to such amount.   p. 264.

3. EVIDENCE.—*Compromise.*—An offer by a party to pay a sum of money as a compromise is not admissible as an admission of indebtedness.   p. 265.

4. TRIAL.—*Evidence.*—*Motion to Strike Out.*—If any evidence embraced in a motion to strike out is admissible, such motion should be overruled.   p. 268.

5. EVIDENCE.—*Compromise.*—*Facts Admitted in Conversation Concerning.*—Where, in an effort to make a compromise of a claim, defendant said he would dispose of his property and thus defeat any judgment that might be rendered on such claim, such declaration is admissible in evidence as an admission and its exclusion is reversible error.   p. 268.

From Floyd Circuit Court; *W. C. Utz,* Judge.

Action by Henry Schnull and others against Emmett Cuddy.   From a judgment for plaintiffs for less than their demand, they appeal.   *Reversed.*

*Smith & Korbly, James W. Fortune* and *G. B. McIntyre,* for appellants.

*George H. Voigt* and *C. L. & H. E. Jewett,* for appellee.

COMSTOCK, J.—Appellants brought this action against the appellee to recover damages for the breach of a contract to sell to them 2,000 cases of tomatoes during the packing season of 1901.   The first and second paragraphs of the complaint were filed April 12, 1902.   October 7, 1902, appellants filed an affidavit for attachment and garnishment, naming the Van Camp Packing Company as gar-

nishee defendant, and attaching $1,805.76 belonging to the appellee. Appellee answered the first and second paragraphs of the complaint in three paragraphs, the first being a general denial. The second and third paragraphs admitted the execution of the contract sued on. In addition, the second averred that the defendant notified the plaintiffs that he could not and would not deliver the tomatoes contracted for, and that at that time canned tomatoes were worth seventy cents per dozen cans and no more. The third paragraph alleged that during the time in which the defendant was under contract to deliver the tomatoes they were worth seventy cents per dozen cans and no more. Reply by general denial was filed to the answers. On the 18th day of November, 1902, plaintiffs filed a third paragraph of complaint. This paragraph, upon motion of appellee, was stricken from the files. The issue upon the complaint and the affidavit in attachment were both tried by jury. The jury returned a general verdict in favor of appellant for $300, and answered interrogatories. Appellants had judgment on the general verdict, and appellee, upon the issues in attachment.

The first specification of error challenges the action of the court in striking out said third paragraph. Whether this action of the court was error, and whether the 1. questions sought to be raised therein by appellants, are presented by the record is discussed at considerable length. The material averments of said paragraph were provable under other paragraphs of the complaint, and the action of the court, even if erroneous, was therefore not reversible error. We deem it proper to say in reference to the paragraph in question that some of the averments which counsel for appellants treat as averments of fact appear to this court to be mere conclusions.

Appellants next insist that the court erred in overruling their motion for a judgment for $500 upon the interrog-

atories submitted to the jury and answers thereto, notwithstanding the general verdict. It is insisted that the following interrogatories and answers show that the appellants were entitled to judgment greater than that fixed by the verdict. "Interrogatory No. 2. Did the defendant, Emmett Cuddy, enter into a written contract with the plaintiffs on the 1st day of June, 1901, as set out in the complaint, by which he sold to said plaintiffs 1,000 cases, containing two dozen cans each, of three-pound tomatoes, quality guaranteed full standard, at seventy cents per dozen cans, of the pack of the year 1901, and to be shipped to plaintiffs during the packing season of 1901? A. Yes. No. 3. Did the defendant deliver to the plaintiffs the tomatoes as contracted for? A. No. No. 4. Did defendant deliver to plaintiffs any canned tomatoes in compliance with the terms of said contract? A. No. No. 5. When in the year 1901 did the packing season at Sellersburg, Indiana, close? A. About October 10, 1901." "No. 16. What was the market value per dozen of canned tomatoes of the kind and quality mentioned in said contract? A. About ninety-five cents per dozen. No. 17. What was the market value per dozen in Sellersburg, Indiana, at the close of the packing season in the year 1901 of canned tomatoes of the kind and quality mentioned in said contract? A. Ninety-five cents per dozen. No. 18. Did the market value of canned tomatoes of the kind and quality mentioned in the contract decline in value from the date of the close of the packing season in Sellersburg, Indiana, in the year of 1901 to November 7, 1901? A. No." "No. 21. What was the market price of canned tomatoes per dozen of the kind and quality mentioned in said contract at Sellersburg, Indiana, on or about the 1st day of October, 1901? A. About ninety-five cents per dozen. No. 22. Did the market value of canned tomatoes of the kind and quality mentioned in the contract decline in value from the 1st day of October, 1901, to the close of the pack-

ing season in the year 1901? A. No." If these answers
sustain said claim, the court erred in overruling appellants'
motion. *Wood* v. *Wack* (1903), 31 Ind. App. 252, and
cases cited; *Froman* v. *Rous* (1882), 83 Ind. 94. The
answers upon which appellants rely are indefinite. They
do not show every essential fact necessary to a recovery.
They do not therefore clearly show that the jury erred in
computing the amount of the verdict.

The first reason stated in the motion for a new trial in
the attachment and garnishment proceedings is that the
court erred in striking out the testimony of Mr.
3. Korbly, one of the appellants' attorneys. The affi-
davit for attachment and garnishment alleged that
the appellee was removing, or was about to remove, his
property subject to execution out of the State, not leaving
enough therein to satisfy plaintiffs' said claim, and that
appellee was about to sell, convey or otherwise dispose of
his property subject to execution, with the fraudulent in-
tent to cheat, hinder and delay his creditors, and partic-
ularly appellants.

In support of the allegations of the affidavit Mr. Korbly
testified to a conversation between himself and appellee
at appellee's place of business in Sellersburg, Indiana.
After he had testified in chief and had been cross-examined,
the court struck out his testimony on the ground that the
conversation was privileged and could not be given in evi-
dence against appellee. The action had been commenced
and was pending at the time testified to by Mr. Korbly.
The purpose of the visit to Mr. Cuddy is stated as follows:
"Mr. Fortune and myself went to Sellersburg to see Mr.
Cuddy, for the purpose of securing a settlement of the
claims of Schnull & Co.—either the money or tomatoes.
We met Mr. Cuddy at Sellersburg and told him the pur-
pose of our visit. Mr. Cuddy said he did not owe Schnull
& Co. anything, and he also said that there was a
short pack that year [1901], and that he did not think

that Schnull & Co. were treating him right. I told him that a suit was pending for the damages Schnull & Co. had sustained by his failure to deliver the tomatoes, and that we would like to have the matter adjusted before the trial came up, for the reason that it would save him expense as well as Schnull & Co. 'Well,' said Cuddy, 'I will pay $150, and no more.' I said that we would not accept that proposition, and that the only thing that we could do under the circumstances would be to go ahead with the trial of the suit. Then Cuddy said: 'Go ahead with the trial of the suit, and get your judgment if you can.' Then he said: 'If you get a judgment against me   *   *   *   I will dispose of my property, so I will, and you won't get a   *   *   *   cent, and I will tell the judge so too.' At the time he made that statement I had an envelope containing some papers in my hand, and I was standing beside a box or table, leaning on it, with my envelope there, and I wrote down the words that he said. That is about the sum and substance of the conversation that took place. Before leaving, I read to Mr. Cuddy what he said, and asked him if that was what he had said, and in answer to that question he said: 'Yes.' The only thing I know about Mr. Cuddy having shipped, or was about to ship, a certain consignment of tomatoes from his factory on that date to the city of Louisville was what Mr. Cuddy said about that himself. After the conversation with Mr. Cuddy above detailed, I went through the canning factory and saw that he had many cans of tomatoes piled up in stacks about four feet high, and asked him to deliver tomatoes to us in lieu of money, and pointed to the canned tomatoes that were stacked up, but he said that he was going to ship them out of the State, to Louisville."

The exact words which appeared on the envelope as spoken by Mr. Cuddy are as follows: "I will assign my property to my wife, or get rid of it, and I will have   *   *   * little left if the court goes against me   *   *   *   and I.

will tell the judge so too." Upon cross-examination the witness stated: "The canning factory at the time was running and we walked around in the canning factory and out into the warehouse, and I asked Mr. Cuddy whether or not he would deliver the tomatoes of the pack of 1902 in lieu of the pack of 1901, and he said, waving his hand, these tomatoes are sold, and I am going to ship them out of the State. This was immediately after the conversation in which he said he would get rid of the property if judgment went against him. The tomatoes that he said had been sold and that he intended to ship out of the State were in cans, and piled up one on top of another, and piled up about four feet high."

On reëxamination Korbly testified: "The statement of Mr. Cuddy in reference to the transfer of his property to his wife, or when he said he would get rid of his property, was made after all reference to the $500 proposition and expenses. We had finished talking. Cuddy made the proposition of $150 after we made the proposition of $500 in settlement, and that ended the negotiation. As soon as he made the $150 proposition we quit. No further proposition was made with reference to the money proposition. Then it was that I said there was nothing for us to do but go ahead and fight the suit."

It is well settled that an offer by a party to pay a sum of money by way of compromise of an existing controversy is not to be used as evidence against him. One may buy his peace, and his offer made by way of compromise is not admissible as an admission in a civil action. It is clear, therefore, that the evidence of offer of $150 by appellee to appellants for settlement of a pending suit was not admissible. But it is also well settled that admissions or statements of independent facts not made with a view to compromise, although made during the negotiations, are not so privileged. 1 Elliott, Evidence, §646.

In *Gerrish* v. *Sweetser* (1826), 4 Pick. 374, 377, after

stating the general rule, the court say: "This rule is founded in policy, that there may be no discouragement to amicable adjustments of disputes, by a fear, that if not completed, the party amicably disposed may be injured. But this rule seems confined to the mere offer of compromise, for it is held that any independent facts admitted during the treaty for a compromise, may be given in evidence as admissions. This limitation or exception to the rule is laid down in Starkey and Phillips, and was adopted by this court in the case *Marsh* v. *Gold* [1824], 2 Pick. 285." See, also, *Murray* v. *Coster* (1825), 4 Cowen 617, 635.

4. If any portion of the evidence embraced in the motion to strike out was admissible, the motion was improperly sustained. *Carver* v. *Louthain* (1872), 38 Ind. 530, 541.

5. The statement of Mr. Cuddy in reference to the transfer of his property to his wife, and that he would get rid of his property, was made after the proposition of $150 had been rejected. The offer of compromise was a closed incident. The statement in reference to the disposition of his property was an independent one. It was competent evidence upon appellee's intention as to that particular fact. The facts in the testimony of the witness were susceptible of separation. The intention of the appellee as to the disposition of his property was a matter in no way connected with the merits of the cause, although appellee's purpose may have been to discourage appellants in their attempt to collect their claim. *Waldridge* v. *Kennison* (1795), 1 Esp. 143. The exclusion of this evidence was manifestly prejudicial to the appellants, and was error, and for this ruling the judgment must be reversed. Other questions discussed may not arise upon a second trial.

Judgment reversed, with instructions to sustain appellants' motion for a new trial, and for further proceedings not inconsistent with this opinion.