*J. A. Stein, Z. Baird, R. H. Milroy,* and *J. H. Gould,* for appellees.

---

SMITH and ANOTHER *v.* DALLAS and Another.

CONTRACT.—B. received of A. in November, 1864, a certain number of sheep, on the following terms, set out in a written contract: B. to give annually one pound and a half of wool per head, sheared from said sheep and delivered by the 15th day of June, and pay, on or before the 1st day of July, 1868, four dollars and fifty cents per head for the sheep. If the annual amount of wool was not delivered, the principal sum, as well as the wool, should be due at the end of the year, and the above amount of wool should be paid yearly until the contract was fulfilled. Complaint by A. against B. on the contract, alleging that B. in August, 1865, delivered on the contract a certain quantity of wool, being the amount that was due in June, 1865, and something over, and that no wool was delivered for the years 1866 or 1867, thereby rendering the contract due as to principal and wool. ⁄ The complaint of A. was filed July 24th, 1867.

B. answered, that the sheep were affected with a contagious disease when he received them, and one half of them died of said disease, without his

Smith and Another *v.* Dallas and Another.

fault, before the shearing season in 1865, and the residue before the shearing season in 1866, and that the wool delivered was all that was ever sheared from the sheep.

*Held,* that by the contract, the property in the sheep passed to B. and they were thenceforth at his risk, and their death did not excuse him from delivering the wool; and on failure to deliver it, A. could maintain his suit for the price of the sheep and for the wool not delivered.

PLEADING.—*Answer.—Warranty.*—An answer setting up a warranty made by parol at the time of entering into a written contract for the sale of the property warranted, and alleging that it was also at the same time agreed by parol that the warranty should not be inserted in the written contract, is bad.

EVIDENCE.—Evidence that at the time of the contract it was agreed that B. might sublet the sheep if he desired, upon the same terms, and when sublet he was to be credited for the same, and that he did thus sublet some of the sheep, is at variance with the written contract and inadmissible.

OPEN AND CLOSE.—Notwithstanding no general denial is filed, if it is necessary for the plaintiff to introduce proof to entitle him to recover full damages, he will be entitled to open and close.

APPEAL from the Vermillion Circuit Court.

DOWNEY, C. J.—Smith and Hays sued Dallas and Dallas on a written contract of November 17th, 1864, by which the defendants acknowledged that they had received of the plaintiffs three hundred and ninety sheep, to keep on the following terms: they agreed to give annually one and a half pounds of wool per head, sheared *from said sheep,* well washed on the sheep, put up in good merchantable order, and delivered by the 15th day of June, to the plaintiffs or their assigns, at Rockville, Park county, Indiana. And on or before the 1st day of July, 1868, they promised to pay to the plaintiffs, or order, four dollars and fifty cents per head for the sheep, or if they paid the plaintiffs the above price between the delivery of the annual amount of wool, and the 1st day of July following, of any year, and expressed the money to them at Iberia, Morrow county, Ohio, then the agreement was to be void. It was further stipulated that if the annual amount of wool was not delivered, the principal sum, as well as the wool, should be due, at the end of the year; and that they would pay the above amount of wool yearly until the contract was fulfilled, &c.

The plaintiffs allege that the defendants delivered to them five hundred and ninety-seven pounds of wool on the contract, August 24th, 1865, which was the amount, and something more than the amount due on the 15th day of June, 1865; that the defendants failed to deliver the five hundred and seventy-three pounds of wool due on the 15th day of June, 1866, and five hundred and eighty-five pounds due June 15th, 1867, thereby rendering the contract both as to principal and wool due, stating values and amounts; wherefore, &c. The defendants answered,

1. They admit the execution of the agreement, but say that at the time they received the sheep they were affected with a contagious disease; one-half of them died soon after they were received, and before shearing time, 15th of June, 1865, and the residue before the shearing season in the year 1866, all from said contagious disease, without any fault of the defendants. They allege the delivery of the five hundred and ninety-seven pounds of wool, which they allege was all the wool they ever sheared from the sheep, and more than one and a half pounds per head; wherefore, &c.

2. That the plaintiffs, at the time of executing the agreement, represented themselves as dealers in sheep and well acquainted with their diseases; that they had imported the sheep from Ohio; that they were sound, healthy, and free from all disease; that the defendants were ignorant of the nature of sheep and their diseases, and relied on the plaintiffs' representations, which the plaintiffs knew; that the sheep were fatally unsound when received, by reason whereof they became entirely worthless, sickened and died, long before the commencement of this suit; wherefore, &c.

3. The same representations, &c., as in the preceding paragraph, and that the defendants held fifty-five other sheep with which they desired the purchased sheep to run, which the plaintiffs knew; that before they knew that said sheep so purchased from the plaintiffs were diseased, their other sheep, from running with them, became diseased, and they too died;

that they expended one thousand dollars in doctoring, feeding, and taking care of them, and have been damaged four thousand dollars, which they set up as a counter claim, and ask judgment for one thousand dollars.

4. That the plaintiffs represented that they were dealers in sheep and acquainted with their diseases, and when they sold said sheep to the defendants, represented them to be sound and free from disease, and warranted them to be sound and healthy; that they were unsound and diseased with a fatal and deadly contagion, of which the defendants were ignorant, which rendered them valueless and caused them to die; that said warranty was untrue, false, and fraudulent, and made with intent to, and did mislead and defraud the defendants, and induced them to enter into the contract sued on; that the defendants refused to take the sheep without a warranty of their soundness; that the plaintiffs then warranted them to be sound, to mislead and defraud the defendants, and induce them to purchase the sheep; that the warranty was false and fraudulent, and the defendants were deceived thereby and induced to enter into the contract; that when the contract was executed there was an understanding and agreement between the parties thereto, that it should not embrace the whole of the terms of the agreement; that the warranty should stand and be binding, but should not be inserted in the writing, but should remain a distinct part of the whole agreement, supplementary to the written agreement, to defraud the defendants; and that they have been damaged thereby to the amount of four thousand dollars; wherefore, &c.

5. Payment.

The plaintiffs demurred to the first and fourth paragraphs of the answer, which demurrer was overruled, and they excepted. There was then a reply by general denial of the whole answer. Trial by jury; verdict for the plaintiffs for two hundred and fifty dollars. Special findings to questions, as follows :

Smith and Another *v.* Dallas and Another.

" 1. Were the sheep sound at the time of the sale to the defendants?" Ans. "We think they were not."

" 2. At the time of such sale, did the agent of the plaintiffs, for the purpose of defrauding the defendants, warrant the sheep sound?" Ans. "We think he did not."

" 3. Did the agent of the plaintiffs make a warranty of the soundness of the sheep prior to executing the contract?" Ans. "We think he did."

" 4. Were the defendants prevented from delivering the wool specified in the contract, in the years 1866 and 1867, or either of them, from any contagious disease in the sheep at the time of the purchase by the defendants?" Ans. "We think they were."

There was a motion for a new trial for eleven reasons, which was overruled.

Three specifications are made in the assignment of errors. 1. The overruling of the demurrer to the first paragraph of the answer. 2. The overruling of the demurrer to the fourth paragraph of the answer. 3. The refusal to grant a new trial.

1. The first question is as to the overruling of the demurrer to the first paragraph of the answer. The defendants insist that as the suit was commenced on the 24th of July, 1867, before the time when the sheep were to be paid for, which was to be done on the 1st day of July, 1868, if the sheep had died from disease, without their fault, before the time when the payment of wool was to be made in June, 1866, as the wool was to be shorn from the same sheep sold, they were excused from the delivery of the wool by the death of the sheep, which rendered it impossible to perform that part of their contract; and that, therefore, the plaintiffs cannot claim that the principal sum became due by the failure to deliver the wool.

We think this position is wholly untenable. The defendants, by delivering the wool each year as agreed, might have had time to pay for the sheep till July 1st, 1868. But if they failed to deliver the wool, as it became due, they then

became liable to pay for the sheep and for the wool which they had so failed to deliver, and both might be sued for at any time after such failure. The property in the sheep passed by the delivery under the contract to the defendants, and they were thenceforth at their risk. That they died from disease, is no better reason for not complying with the contract than if they had been killed, or had strayed away and been lost. The plaintiffs were not insurers of their continued existence. The parties, by the contract, provided for a failure to deliver the wool, by making the defendants liable for the value of it. This must be construed to cover a failure from whatever cause it may have originated. There is a distinction between a contract to do a thing which is possible in itself, and one whereby the party engages to do something which is absolutely impossible; for in the former case the contract subsists, notwithstanding it is beyond the power of the party to perform it, it being deemed to be his own fault and folly that he did not thereby expressly provide against contingencies and exempt himself from responsibility in certain events. And therefore, in such a case, the performance is not excused by the occurrence of an inevitable accident or other contingency, although it was not foreseen by, or within the control of, the party. Chitty on Con. 803. See, also, *Wood* v. *Long*, 28 Ind. 314.

The demurrer to the first paragraph of the answer should have been sustained. The instruction given by the court based on the same view of the law was not correct, and should not have been given.

2. The next question relates to the fourth paragraph of the answer. We do not see the necessity or propriety of blending fraud and warranty as is done in this paragraph. But regarding it as a defense based on the false and fraudulent representations, we are inclined to hold it to be good. If we were compelled to regard it as setting up a warranty, made by parol at the time of entering into the written contract, we should be compelled to hold it bad. The parties could not, by a parol agreement that a part of their

Smith and Another *v.* Dallas and Another.

contract should not be reduced to writing, change the rule of law which excludes parol evidence in such a case, on account of its tendency to vary the written contract.

Several questions are argued and presented for decision arising under the motion for a new trial and the action of the court in overruling it.

3. The court allowed the defendants to introduce evidence on the trial, that it was agreed, at the time of making the contract for the purchase of the sheep, that they might sublet as many as they wanted to of the sheep, to responsible persons, upon the same terms of their contract with the plaintiffs, and when so sublet they were to be credited for that number; and that accordingly they did sublet some of the sheep to other persons, &c. On this subject the court instructed the jury, that if the plaintiffs authorized the defendants to bail out any portion of the sheep, on the same terms on which the defendants took them from plaintiffs, and the defendants did so bail out a portion of said sheep, and the plaintiffs accepted the said bailment contract in part discharge of defendants' contract, then the jury, if they find for the plaintiffs, must allow the defendants a credit on their contract in a sum equal to the amount of the said bailment contract. There was an exception taken to the ruling of the court in admitting this evidence, and giving this direction to the jury.

There was nothing in the pleadings to warrant this evidence, and it was inadmissible, because it was at variance with the written contract. *McClure* v. *Jeffrey*, 8 Ind. 79; *Oiler* v. *Gard*, 23 Ind. 212. In addition to this, the court seems to have regarded the contract on which the suit was brought and that by which the sheep were sublet, as it is called in the charge, as contracts of bailment. We do not so regard the contract in this case, as we have already intimated.

4. Notwithstanding there was no general denial pleaded, it was necessary for the plaintiffs to prove the amount of their claim resulting from the non-delivery of the wool, to entitle them to full damages. They demanded the right to

open and close, which was denied them. This was error, as wè have decided in the case of *Fetters* v. *The Muncie National Bank*, 34 Ind. 251.

5. As to the sufficiency of the evidence to sustain the verdict of the jury, we have concluded to express no opinion, in view of the fact that the case will probably be tried again, and will have to be reversed on the grounds above stated.

There are some other points made in the motion for a new trial, but no others for which the case ought, in our opinion, to be reversed.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

*A. G. Porter*, *B. Harrison*, and *W. P. Fishback*, for appellants.

