## DURLAND v. PITCAIRN.

CONTRACT.—*Failure of Condition Caused by Party Bound to Performance.*— Where the performance of a stipulation in a contract is made to depend upon the continued existence at the maturity of said contract of another contract existing between the party who is to perform such stipulation and a person who is not a party to the contract containing said stipulation, and, before the maturity of said contract containing said stipulation, the other contract is terminated, not by operation of its provisions, but by the consent of the person who is to perform said stipulation, without the knowledge or consent of the other party to the contract containing said stipulation, the performance of said stipulation will not be excused because of the termination of said other contract before maturity of the contract containing such stipulation.

SAME.—Complaint by A. against B., alleging that the former had an interest with the latter in a contract between a certain railroad company and B., whereby B. had, for a certain number of years, the exclusive right of conveying, between certain places named, freight and passengers transported over the railroad of said company; and that, in consideration that A. would transfer and assign all his interest in said contract to B., the latter made and delivered to the former a written instrument, whereby B. promised to pay to A., one year after date, a certain sum, subject to an agreement on the back of said instrument, or note, which agreement was signed by A., and the contingency thereby provided was, that transfer between said places, under said contract between said railroad company and B., should be in existence and operation at maturity of said note; otherwise it was to be void.    A copy of said note and a copy of the condition endorsed thereon were made parts of the complaint.    Said contract between the railroad company and B., a copy of which was made a part of the complaint, provided two modes of annulling it, the first upon

Durland *v.* Pitcairn.

the refusal or failure of B. to furnish boats for such transfer and his failure to comply with the agreement, and the second upon the building of a railroad between said places. The complaint alleged, that afterwards, at a date given, before the maturity of said note, by the consent of B., and without the consent or knowledge of A., said agreement with said railroad company was cancelled and set aside, and B. made an agreement with another railroad company named for the performance by B. of the same services, a copy thereof being made a part of the complaint, and it was alleged that B. was performing said services under the latter contract, and that said note was due, etc.

*Held*, that B. could not thus voluntarily defeat the condition of said note and thereby relieve himself from liability to A., and that the complaint was sufficient on demurrer.

SAME.—Another paragraph of complaint set out said note and the condition thereon and the contract of B. with said railroad company referred to in said condition, and alleged that after the delivery of said note another railroad company named secured control of the railroad of the former company, and that thereupon B. made a new contract with said other railroad company, providing for the performance by B. of the same service for a longer period; and said latter contract, a copy of which was filed with this paragraph, referred to the former contract and showed by its terms that it superseded said former contract, and took the place thereof, and, with the complaint, showed the consolidation of said railroad companies.

*Held*, that this paragraph also, for the same reason as the former, was sufficient on demurrer.

SAME.—*Parol Agreement Contemporaneous with Written Contract.*—Said note and the condition endorsed thereon, considered in connection with the contract referred to in said condition, indicated that A. and B. did not intend that B. should defeat a recovery on the note by surrendering the contract, but indicated an intention that the note should not be payable, if the contract should be terminated in any of the modes therein provided for; and an answer setting up a parol contemporaneous agreement, so changing such legal effect of the language of the written instruments that the payment of the note might be defeated by the termination of said contract by the voluntary act of B., was bad on demurrer.

CONSIDERATION. — *Pleading.* — *Promissory Note with Condition.* — In this State, a written promise to pay money, whether it be a promissory note negotiable by the law merchant, or a note payable upon condition and therefore assignable under the statute, imports a sufficient consideration, and in a complaint thereon a consideration need not be averred.

From the Vanderburgh Circuit Court.

*B. Hynes, H. A. Mattison* and *A. Gilchrist,* for appellant.
*C. Denby* and *D. B. Kumler,* for appellee.

BUSKIRK, J.—The assignment of errors calls in question the sufficiency of the first and second paragraphs of the complaint and the first and second paragraphs of the answer.

The action was by appellee against appellant. The complaint consisted of two paragraphs, the first of which was as follows:

"Par. 1. The said plaintiff, Hugh Pitcairn, complains of the said defendant, Albert O. Durland, and says that on the 1st day of May, 1872, the plaintiff had an interest in a contract made and entered into between Charles G. Perkins and said Durland, of the one part, and the Evansville, Henderson and Nashville Railroad Company of the other part, a copy whereof is hereunto filed and marked 'A,' whereby said Perkins and Durland had the exclusive right to transfer and deliver all freight and passengers between the city of Evansville and the city of Henderson, to and from such wharf-boat or wharf, in either city, as might be directed by the president or superintendent of the said Evansville, Henderson and Nashville Railroad Company, transported or to be transported over the railroad of said company; which said agreement, by the terms thereof, was to be in force for the term of five years from the 1st day of December, 1868; and in consideration that said plaintiff would transfer and assign to said defendant all his interest in said contract, the defendant made and delivered to the plaintiff an instrument of writing, of which the following is a copy:

"'$1060.·        EVANSVILLE, IND., May 1st, 1872.

"'One year after date, I promise to pay to order of Hugh Pitcairn, one thousand and sixty dollars, subject to agreement on back.        A. O. DURLAND.'

"Which writing endorsed thereon is as follows:

"'Subject referred to on face of this note is, that transfer between Evansville and Henderson, under present contract with the Evansville, Henderson & Nashville Railroad Company and Perkins, Durland and others shall be in exist-

ence and operation at maturity of this note; otherwise to be void.                    HUGH PITCAIRN,

"'Evansville, Ind., May 1st, 1872.'

"And plaintiff says that said contract referred to in said writing remained in existence until the 26th day of November, 1872, when, by consent of said defendant and without the consent or knowledge of said plaintiff, the said agreement was cancelled and set aside, and the said defendant and said Perkins on said 26th of November, 1872, made and entered into an agreement with the St. Louis & South-Eastern Railway Company for the performance of the same duties that are described in said first agreement as above set out, a copy of which agreement is hereunto filed, marked 'Exhibit B,' and said Perkins and Durland are now carrying out and performing said agreement with said St. Louis & South-Eastern Railway Company, and enjoying the benefit thereof. Wherefore, and by reason of the premises, the plaintiff says that the said defendant is indebted to him in the sum of one thousand and sixty dollars, with interest from May 1st, 1873; that, though often requested, he has refused to pay the same, and the said sum remains entirely due and unpaid; and plaintiff asks judgment for twelve hundred dollars."

We will state the positions assumed by opposing counsel in their own language. Counsel for appellant say:

"The first paragraph of the complaint does not state a cause of action.

"The amount claimed in this action being payable upon a condition, before appellee can recover, he must show either performance of the condition or some sufficient reason why it should be paid notwithstanding the condition.

"Performance is not claimed. This paragraph shows that the contingency upon which the instrument was to be paid did not happen. The contract set out as 'Exhibit A' was not in existence or operation on the 1st day of May, 1873, but was annulled and set aside on the 26th of November, 1872.

" But the appellee claims that this paragraph sets out matter which entitles him to recover despite the condition.

" If there is such matter, it is contained in the averment that 'by the consent of said defendant, and without the consent or knowledge of the plaintiff, the said agreement was annulled and set aside.'

" There is a further allegation that the appellant and his associates have entered into a new contract with another party for doing the same service, but this is manifestly totally irrelevant.

" First. It does not appear by this paragraph that the St. Louis & South-Eastern Railway Company has any connection with the Evansville, Henderson & Nashville Railroad Company, or with the contract set out in 'Exhibit A.'

" Second. It appears by the contracts set out (exhibits 'A' and 'B') that they are not for performing the same duties. The contract with the Evansville, Henderson & Nashville Railroad Company is simply for the transfer of freight and passengers; that with the St. Louis & South-Eastern Railway Company, in addition, provides for the transfer of cars of all kinds, engines, etc., and is very different in its main provisions from the other.

" The state of the case, as shown by this paragraph, is this: With Durland's consent, the contract with the Evansville, Henderson and Nashville Railroad Company is set aside; he then makes a new contract providing for the doing of the same and other things with another party, which, so far as the paragraph shows, had nothing to do with the Evansville, Henderson and Nashville Railroad Company, and the new contract has no other relation to the old one than, although *inter alias partes*, the subject-matter is in part the same.

"If, then, this paragraph is good, it is so entirely by the force of the averment that the contract was done away with by the 'consent of said defendant, and without the knowledge or consent of the plaintiff.'

" There is no allegation that this was done in fraud of plaintiff's rights, no averment of bad faith, or that the con-

tract 'A' was annulled or set aside, for the purpose of preventing the appellee from collecting this one thousand and sixty dollars; no averment that there was any agreement or understanding on the part of the appellee and the appellant, that if the contract was annulled by the act or consent of the defendant, then this one thousand and sixty dollars was to be paid discharged of the condition. The appellee relies entirely upon the proposition that the single fact that Durland consented that the contract should be annulled renders him liable upon the instrument precisely as though the condition had been performed."

Counsel for appellee say:

"The first point made by the appellant is, that the court erred in overruling a demurrer to the first paragraph of the complaint.

"The allegations in the said first paragraph are, that Albert O. Durland and Charles G. Perkins and others and the appellee, Hugh Pitcairn, on the 1st day of May, 1872, were the owners of a contract made with the Evansville, Henderson & Nashville Railroad Company, by which it was agreed that the said company should pay said parties certain sums of money for transporting passengers and freight between Henderson, Kentucky, and Evansville, Indiana, for the term of five years. This contract is set out in the record. It contains a condition, that it may be annulled by the railroad company if the contractors fail to do their duty. It contains another condition, that it shall terminate when the gap between Henderson and Evansville is filled by a railroad.

"Subject to these conditions, the partnership of Durland, Perkins, Pitcairn and others had the right to transport passengers and freight until the 1st day of December, 1873.

"Durland desires to buy Pitcairn out, and offers to pay him three thousand dollars for his interest. Pitcairn accepts the offer. Durland gives to Pitcairn the instrument sued on, in part payment, agreeing to pay him one thousand and sixty dollars one year after date.

" Pitcairn endorses on this instrument the following agreement:

" ' Subject referred to on face of this note is, that transfer between Evansville and Henderson, under present contract with the Evansville, Henderson and Nashville Railroad Company, and Perkins, Durland and others shall· be in existence and operation at maturity of this note; otherwise to be void.                                    HUGH PITCAIRN.

" ' Evansville, Ind., May 1st, 1872.'

" This paragraph shows that the contract marked 'A' remained in force until the 26th day of November, 1872, when it was cancelled by and with Durland's consent, and without the consent or knowledge of Pitcairn, and Perkins and Durland made another contract, which is substantially the same, and in some respects better for the contractors, with another and different railroad company.

" Because the first paragraph of the complaint does not show that the contract marked 'A' was in existence at the maturity of the instrument sued on, the appellant contends that it is bad.

" We concede that we must show either the existence of the contract, or some sufficient reason why the money should be paid, notwithstanding the condition.

" We claim that the voluntary surrender of the contract by Durland amounts to fraud in law, and is a waiver of the condition.

" The condition that the contract shall be in existence at the maturity of the note does not mean that Durland may surrender the contract, and thereby defraud Pitcairn out of the money he promised to pay him; but it means that if, for any of the reasons given in the contract itself, it is terminated, the money shall not be paid.

" This question is analogous to the question, often decided by the courts, to the effect that, where a precedent condition was to have been performed by the plaintiff, but its performance has been prevented by the defendant, such prevention

may be averred as an excuse for non-performance.    See the case of *Ruble* v. *Massey*, 2 Ind. 636.

" To illustrate the absurdity of holding that Durland could, by his own act, cancel the agreement to pay Pitcairn, take a few plain examples.

" My brother Gilchrist and the writer are partners in the practice of the law.    We are the attorneys of some mammoth corporation, at a salary of twenty thousand dollars per annum, holding our employment by a written contract.    I sell my interest in the business to him; but I consent that if the contract under which we receive twenty thousand dollars is rescinded or is not in existence at the time that payment is due from him to me, he shall pay nothing.    He continues for six months to draw the proportionate part of the twenty thousand dollars, and then voluntarily surrenders his contract.    But he takes at the time of the surrender another contract, equally valuable, to do the same work for the corporation under another name, and for the remainder of the year before the maturity of the note he does the law business of the new corporation.    When I demand payment of the amount that he agreed to pay me for my interest in the business, he answers that his contract with the first corporation is no longer in existence.    I reply that he voluntarily surrendered his contract, and he claims that he had, under his arrangement with me, a right to surrender.    By this rule he might have retained his first employment until eleven months and twenty-nine days had expired, and prevented payment by proof that on the last day but one he had surrendered his contract.    So, a large manufacturing establishment, having immense and valuable contracts, which, under certain expressed contingencies, may be rescinded, may defraud a retiring partner, by throwing up its contracts, taking care, however, to secure other and better jobs from the same parties."

The contract referred to in the condition endorsed upon the back of the note is too lengthy to be here set out.    There

is only one portion of it which has much bearing upon the question under examination, and that is in these words:

" It is also agreed and understood, that if the said Perkins and Durland refuse or fail to furnish a boat or boats to make the transfer of passengers and freight, as herein provided, and fail to comply with the agreement, the said Evansville, Henderson and Nashville Railroad Company reserves and has the power to annul this agreement and declare it void.

" It is understood and agreed that the contract shall terminate and end so soon as a railroad is built from Henderson to a point opposite, or nearly opposite, Evansville, or from such point opposite Evansville to Henderson, and the president can declare it null and void."

It is conceded that the railroad company did not declare the contract to be annulled and void by reason of the failure of Perkins and Durland to perform their part of it; that it was not rendered null and void by reason of the construction of a railroad from Henderson to a point opposite Evansville, or from a point opposite Evansville to Henderson; and that the contract was not in existence and operation at the maturity of the note sued on.

The question is, therefore, reduced to the single proposition, whether the averment in the first paragraph of the complaint, that "by the consent of said defendant, and without the consent or knowledge of the plaintiff, the said agreement was annulled and set aside," entitles the plaintiff to recover.

It is an elementary rule, that he who prevents a thing being done shall not avail himself of the non-performance he has occasioned. Broom Leg. Max. 195. If a man makes a feoffment in fee, upon condition that the feoffee shall re-enfeoff him before a certain day, and before that day the feoffor disseize the feoffee, and hold him out by force until the day be past; in this case, the estate of the feoffee is absolute, because the feoffor shall not take advantage of his own wrongful act, which occasioned the non-performance of the condition. Co. Lit. 206 b.

Where the condition of a bond, etc., was possible at the time

of making it, and afterwards becomes impossible by the act of the obligee himself, the obligation shall be saved. Com. Dig., tit. Condition—(D. 1); *Hayward* v. *Bennett*, 3 C. B. 404; *Hayward* v. *Bennett*, 5 C. B. 593. So, where, by the terms of a contract, a service to be performed by A. for B. is to be paid for in goods, A. cannot declare in debt for the value of the service, but must sue on the special contract. But if B., by his own act, render the delivery of the goods impossible, A. may sue in debt for the value of the service. *Keys* v. *Harwood*, 2 C. B. 905. It is hardly necessary to multiply authorities. "All the cases admit," says Lord ALVANLEY in *Touteng* v. *Hubbard*, 3 B. & P. 302, "that where a party has been disabled from performing his contract by his own default, it is not competent to him to allege the circumstances by which he was prevented as an excuse for his omission;" and, "if a man binds himself to do certain acts which he afterwards renders himself unable to perform, he thereby dispenses with the performance of conditions precedent to the act which he has so rendered himself unable to perform." If a man promises to marry a woman on a certain day and before that day marries another woman, he is instantly liable to an action for breach of promise of marriage. *Short* v. *Stone*, 8 Q. B. 358.

There are two recent decisions of this court which are very much in point, and are, in our opinion, decisive of the question under examination. The first is that of *Hawley* v. *Smith*, 45 Ind. 183. There the compensation of Ellsworth depended upon whether he sold certain lands within four years. The condition was not performed, but it was held that he was entitled to recover, because Pomeroy had, by his own act, prevented a performance on the part of Ellsworth. The court say:

" If the responsibility for this failure rests upon Ellsworth, he cannot recover; but if the power of Ellsworth to perform was taken away by the acts of Pomeroy, and further acts of performance were rendered impossible, he is not chargeable with the failure, and may recover. When one party to a

contract has refused to perform his part of the contract, or has rendered performance on the part of the other impossible, performance on the part of the other is excused. *Turner* v. *Parry*, 27 Ind. 163; *North's Adm'rs* v. *Pepper*, 21 Wend. 636; *Skinner* v. *Tinker*, 34 Barb. 333; *Crary* v. *Smith*, 2 Comst. 60.

" The rule is, that when the performance by one party is prevented by the act of the other, the party not in fault should recover in damages such sum as will fully compensate him for the injury which he has sustained by reason of the non-performance of the contract. The law is settled that where a precedent condition was to have been performed by the plaintiff, but its performance has been prevented by the defendant, such prevention may be averred as an excuse for non-performance of such precedent condition. *Ruble* v. *Massey*, 2 Ind. 636; *Hotham* v. *The East India Company*, 1 T. R. 638; *Heard* v. *Wadham*, 1 East, 619."

The other case is that of *Lane* v. *Albright*, 49 Ind. 275, where it was held, that if the owner of real estate agreed with a real estate broker that he would pay him a certain amount, if he would find him a purchaser within a reasonable time, who would pay a certain price for his real estate, if within such time the broker procured such purchaser, he was entitled to recover his commission, though the owner of the real estate sold the same before the broker found the purchaser.

In the above case, the sale of the land by Lane was rendered impossible by the act of Albright, and it was held that he could not plead his own act as a defence to the action.

So in the case in judgment. The note sued on was payable upon the condition that the contract referred to was in existence and operation at the maturity of the note. The note, condition endorsed thereon, and the contract referred to, all constituted a part of the agreement, and are to be construed together. From an examination of these different instruments, it is obvious that the parties had in contemplation the termination of the contract in one of the modes

therein provided for, i. e., by the act of the railroad company by reason of the failure of Perkins and Durland to perform their part of it, or by the completion of the railroad between Henderson and a point opposite Evansville.

We think it cannot be held that Durland can, by his voluntary act, defeat the condition and thereby relieve himself of liability.

The court committed no error in overruling the demurrer to the first paragraph of the complaint.

The second paragraph sets out the same instrument and the contract ("Exhibit A") referred to in the condition. It avers, that after delivery of the instrument sued on, the St. Louis and South-Eastern Railroad Company secured control of the Evansville, Henderson and Nashville Railroad Company, and thereupon Durland and his associates made a contract ("Exhibit B") with the former railroad company, providing for the same service, which was to be of longer continuance than the first contract, and was not made for the benefit of Pitcairn, but solely for the benefit of Durland and his associates.

The first objection urged to the second paragraph of the complaint is, that the instrument sued upon, being payable on a condition, cannot be regarded as a promissory note and does not import a consideration, and that, as the said paragraph does not allege a consideration, it is for that reason bad.

The common law rule was, that a valid consideration for the promise upon which a party was charged was essential to a contract not under seal, and must have existed, although the contract be reduced to writing; otherwise the promise was void. And, in declaring upon such a contract, it was necessary to disclose a sufficient consideration, or the promise would have been nudum pactum. So says Chitty on Pleading, p. 321.

But it was always held that an instrument under seal imported a consideration. 1 Pars. Notes & Bills, 175. Our statute (2 G. & H. 180, sec. 273) has changed this rule. It

provides, that "there shall be no difference in evidence between sealed and unsealed writings; and every writing not sealed shall have the same force and effect that it would have if sealed."

The general rule in this State is, that all negotiable paper is presumed to have been given upon sufficient consideration, and this rule obtains, whether the paper sued on be negotiable under the law merchant, or assignable under the provisions of the statute. *Arnold* v. *Brown*, 3 Blackf. 273; *Nichols* v. *Woodruff*, 8 Blackf. 493; *Streeter* v. *Henley*, 1 Ind. 401; *Rogers* v. *Maxwell*, 4 Ind. 243; *Shirkey* v. *Rutherford*, 10 Ind. 414; *Tibbetts* v. *Thatcher*, 14 Ind. 86; *Hays* v. *Gwin*, 19 Ind. 19.

In *Nichols* v. *Woodruff*, *supra*, it was held, that a note for the payment of money on a contingency may, under the statute, be the foundation of an action brought by the payee or assignee, and the consideration for which such note was given need not, therefore, be averred.

The rule in reference to commercial paper is otherwise. To render a note negotiable under the law merchant, it must be payable absolutely in money and for a fixed and ascertained amount.

Counsel for appellant state their next objection to the second paragraph of the complaint in these words:

"This paragraph does not show what became of the original transfer contract ('Exhibit A'); whether it was in existence and operation or not at the end of the year. It is silent as to the manner in which the St. Louis and South-Eastern Railway Company acquired control of the Evansville, Henderson and Nashville Railroad Co. It is not shown that the St. Louis and South-Eastern Railway Company took control of the Evansville, Henderson and Nashville Railroad Co. subject to this transfer contract, or that they were in any manner bound to carry it out. This may have been done under a title prior and paramount to this contract. *Non constat* but that the first transfer contract went out of existence and operation, when the St. Louis and South-Eastern Railway Company obtained control of the Evansville, Hen-

derson and Nashville Railroad Co., and as the result of that event. No connection is shown between these two transfer contracts, except that Durland and his associates are parties to each, and the subject-matter is in part the same.

"That Durland and his associates have contracted with a new party to do the same kind of service, can be of no consequence. The condition was not that Durland should continue to do this transfer business, but that the transfer under the present contract with the Evansville, Henderson and Nashville Railroad Company should be in existence.

"The appellant claims, that, although the 'present contract' with the Evansville, Henderson and Nashville Railroad Company was not in existence, yet because Durland is doing the same kind of business for the party that had obtained control of the Evansville, Henderson and Nashville Railroad Company, this amounts to performance of the condition.

"The parties have used language which effectually excludes any such view of the case.

"The agreement when the instrument is made is, Durland must pay the one thousand and sixty dollars, if, at a specified time, he is carrying on the transfer business under the present contract with the Evansville, Henderson and Nashville Railroad Company, otherwise not."

It is shown, by the second paragraph of the complaint, that subsequent to the execution of the note and before its maturity, Perkins and Durland surrendered the contract referred to in the condition endorsed on the note, and made a new contract with another company for doing the same service with some others in addition. This contract is filed with, and made a part of, the second paragraph of the complaint, and is to be considered in connection with such paragraph.

The second contract refers to the first, and it is fully shown, by all of its terms and conditions and stipulations, that it supersedes and takes the place of the first contract.

It plainly appears, from the averments of the second para-

graph of the complaint and the facts stated in the said contract, that the Evansville, Henderson and Nashville Railroad Company had become consolidated with the St. Louis and South-Eastern Railway Company, and that the latter company had acquired the control and management of the former company, and that the new contract entirely superseded and took the place of the first contract.

It thus appears that the contract mentioned in the condition of the note was annulled by the procurement of Durland, and without the knowledge and consent of Pitcairn; and this brings the second paragraph of the complaint squarely within our ruling on the first paragraph of the complaint.

We think the court committed no error in overruling the demurrer to the second paragraph of the complaint.

. The first and second paragraphs of the answer are quite lengthy. We set out the substance of them, as stated in the brief of counsel for appellant:

"The first paragraph of the answer sets up, that at the time of the purchase of Pitcairn's interest in the transfer contract, the St. Louis and South-Eastern Railway Company was endeavoring to purchase, or in some way get control of, the Evansville, Henderson and Nashville Railroad Co.; that it was understood by the parties that, in that event, the St. Louis and South-Eastern Railway Company would require Durland, and the parties interested with him in the transfer contract, to make a new one providing for a car transfer; that this would involve great expense in providing barges, etc., and make the contract greatly more costly and burdensome; that the agreement of Pitcairn and Durland was, that in case these things happened, and the transfer contract was in that way given up or abandoned, then the one thousand and sixty dollars was not to be paid, and that the condition upon the instrument sued on expresses this agreement; that these events happened precisely as the parties contemplated, and hence the promise to pay is void.

"The second paragraph of the answer avers that after the

making of the transfer contract ('Exhibit A'), the Evans-
ville, Henderson and Nashville Railroad Co. was leased by
the American Contract Company and was run by them.
Pitcairn was superintendent of the railroad under this com-
pany, and as such superintendent could, to some extent, con-
trol the carrying of passengers and freights on the railroad
and the boats connected with it; that Pitcairn bought an
interest in the transfer contract from Durland, Nov. 25th,
1870, by an agreement in writing, filed as 'Exhibit C.'
This agreement, among other things, provided that if Pit-
cairn ever ceased to have any official position on the Evans-
ville, Henderson and Nashville Railroad Co., or left the
employment of the American Contract Company, Durland
might repurchase his interest for two thousand dollars. By
a subsequent arrangement, Durland was to pay full value
if he purchased the interest by January 1st, 1872.

"Before Pitcairn became interested in the contract, the
railroad had threatened to reduce rates for carrying freight,
and had actually reduced them. After Pitcairn's purchase,
he put up the rates and kept them up as long as he remained
superintendent.

"At the time the instrument in suit was made, negotia-
tions were in progress for the consolidation of the Evans-
ville, Henderson and Nashville Railroad Company and
the St. Louis and South-Eastern Railway Company. It
was known by Pitcairn and Durland, that, in that event,
Pitcairn would cease to be superintendent, and would not
have any position on the consolidated road, would require
Durland and his associates to annul the first transfer con-
tract, and to make a new one, providing for a car transfer;
that if Durland and his associates did not consent to this, the
rates of freight under old contract would be so reduced as to
make it of little value, Pitcairn not then being in a position
to keep them up; that a car transfer would involve a large
expense, and Pitcairn was unwilling to incur his share; that,
in view of these things, it was agreed that Durland should
pay Pitcairn for his interest two thousand dollars in cash,

and that in case consolidation was effected, and Durland was called on by the consolidated road to annul the transfer contract and make one providing for a car transfer, he might do so, and in that event he was to pay no more than the two thousand dollars. If these things did not happen, and the transfer contract ('Exhibit A') continued in existence for a year, Durland was to pay one thousand and sixty dollars additional; that the condition on the instrument sued on was intended to express this agreement; that Durland thereupon paid Pitcairn two thousand dollars in cash and gave him the instrument sued on, and Pitcairn assigned him his interest in the transfer contract; that before the end of the year consolidation was effected; Pitcairn ceased to be superintendent and to have any connection with the consolidated road. The consolidated company reduced rates under the old contract and called upon Durland and his associates to annul it and make a new one, providing for a car transfer, and Durland did so; and hence the promise became and is void."

Demurrers were sustained to both paragraphs of the answer. The appellant excepted, and he refusing to answer over, final judgment was rendered for the appellee for the want of an answer.

Counsel for appellant, in attempting to maintain the sufficiency of the answer, use the following language:

"We insist then that the apparent and natural meaning of this condition being that if the transfer contract for any reason—Durland's acts not excepted—is not in existence at the maturity of the note, then the note to be void, and the presumption (if there be such presumption) that the parties intended to say that 'if for any reason save the act or consent of Durland the present contract is not in existence,' etc., being against this apparent literal meaning of the language, the appellant has a right to show by parol that the parties meant just what they have said; that they intended the legal effect of their language to be just what its natural and apparent meaning is. We claim the right to

introduce parol evidence, not to vary, qualify or contradict the writing, but to show that it expresses the exact agreement of the parties.

"This being the law, both paragraphs of the answer are good."

Counsel for the appellant seek to apply to the present case the rule which obtains in reference to legacies, where parol evidence is admissible to show that two legacies, of which the sum and expressed motive exactly coincide, are presumed not to have been intended as cumulative. In such case, to rebut the presumption which makes one of these legacies inoperative, parol evidence will be received; its effect being, not to show that the testator did not mean what he said, but, on the contrary, to prove that he did mean what he expressed.

We do not think the present case can be brought within the rule above stated. The rules for interpreting contracts like the one in the present action are firmly settled by repeated decisions, and should be applied to the case in judgment.

A contract is to be construed according to the real intention of the parties, to be collected, in most cases, from the terms of the contract itself. It should receive a reasonable and favorable construction, so that performance may be enforced according to the sense in which the parties mutually understood it at the time it was made. *Gillum* v. *Dennis*, 4 Ind. 417; *Conwell* v. *Pumphrey*, 9 Ind. 135; *Bates* v. *Dehaven*, 10 Ind. 319.

The terms of a written instrument must be understood in their plain, ordinary, popular sense, unless they have, generally, in respect to the subject-matter, acquired a peculiar sense, distinct from the popular sense; or unless the contract shows that in the particular instance, in order to effectuate the immediate intention of the parties, they must be understood in some other and peculiar sense. *The Evansville, etc., R. R. Co.* v. *Meeds*, 11 Ind. 273; 1 Greenl. Ev., sec. 278; 1 Phil. Ev. 419.

Where a contract is reduced to writing, the legal presumption is, that the entire contract, as finally settled, is

embraced therein, and all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves. *McClure* v. *Jeffrey,* 8 Ind. 79; *French* v. *Turner,* 15 Ind. 59; *Tucker* v. *Talbott,* 15 Ind. 114; *Dale* v. *Evans,* 14 Ind. 288; *Oiler* v. *Gard,* 23 Ind. 212; *Coleman* v. *Hart,* 25 Ind. 256; *Cincinnati, etc., R. R. Co.* v. *Pearce,* 28 Ind. 502; *The President, etc.,* v, *Hamilton,* 34 Ind. 506; *Smith* v. *Dallas,* 35 Ind. 255; *Nelson* v. *Davis,* 40 Ind. 366; *King* v. *The Enterprise Ins. Co.,* 45 Ind. 43, and the numerous cases there cited.

Where several instruments are executed, or several contracts are made, at the same time, in relation to the same subject-matter, and based upon the same consideration, they should be construed together. *Cunningham* v. *Gwinn,* 4 Blackf. 341; *Thomas* v. *Page,* 6 Blackf. 78; *Coe* v. *Smith,* 1 Ind. 267; *Allen* v. *Nofsinger,* 13 Ind. 494; *Cressey* v. *Webb,* 17 Ind. 14; *Collier* v. *Mahan,* 21 Ind. 110; *Judah* v. *Zimmerman,* 22 Ind. 388; *Ireland* v. *Montgomery,* 34 Ind. 174; *Fellows* v. *Kress,* 5 Blackf. 536.

A written agreement cannot be controlled by setting up a contemporaneous verbal understanding of the parties inconsistent with it. *Odam* v. *Beard,* 1 Blackf. 191; *Foley* v. *Cowgill,* 5 Blackf. 18; *Burge* v. *Dishman,* 5 Blackf. 272; *Graves* v. *Clark,* 6 Blackf. 183; *Wilson* v. *Black,* 6 Blackf. 509; *Jacobs* v. *Finkel,* 7 Blackf. 432; *Patterson* v. *Doe,* 8 Blackf. 237; *Russell* v. *Branham,* 8 Blackf. 277; *Clifford* v. *Smith,* 4 Ind. 377; *Mallett* v. *Page,* 8 Ind. 364; *Gatling* v. *Newell,* 9 Ind. 572; *Rigsbee* v. *Bowler,* 17 Ind. 167; *Lamb* v. *Donovan,* 19 Ind. 40; *Swank* v. *Nichols,* 20 Ind. 198; *Snyder* v. *Koons,* 20 Ind. 389; *McKernan* v. *Mayhew,* 21 Ind. 291; *McClintic* v. *Cory,* 22 Ind. 170; *Sourse* v. *Marshall,* 23 Ind. 194; *Rawlings* v. *Fisher,* 24 Ind. 52; *Swank* v. *Nichols,* 24 Ind. 199; *The Cincinnati, etc., R. R. Co.* v. *Pearce,* 28 Ind. 502; *Roberts* v. *Masters,* 40 Ind. 461; *Hol-*

*ton* v. *McCormick*, 45 Ind. 411; *King* v. *The Enterprise Ins. Co.*, 45 Ind. 43; *Rhode* v. *Green*, 26 Ind. 83; *Conger* v. *Parker*, 29 Ind. 380; *Barnes* v. *Bartlett*, 47 Ind. 98.

In *Harris* v. *Doe*, 4 Blackf. 369, the court, on page 374, use the following language:

" We are aware that no general doctrine of law is better settled than that an instrument of writing can not be varied or contradicted by extrinsic evidence—whether documentary or parol. But it is also settled, that when such an instrument, especially if it be a grant or a charter, is so equivocally expressed as to render it doubtful to what object it refers, or evident that a mistake has been committed in the description of the premises granted, as to location or boundaries, it is competent to resort to evidence *aliunde*—even parol testimony—for the purpose of ascertaining that object, or of explaining and elucidating the ambiguity which creates the difficulty. 8 Term R. 379; *Wadley* v. *Bayliss*, 5 Taunt. 752; *Beaumont* v. *Field*, 1 B. & Ald. 247; *Doe, ex dem. Bainbridge*, v. *Statham*, 7 D. & Ry. 141; *Lessee of Dinkle* v. *Marshall*, 3 Binn. 587; *White* v. *Eagan*, 1 Bay's R. 247; *Middleton* v. *Perry*, 2 Bay's R. 539; *Helm* v. *Small*, Hardin's Rep. 369; *Steele's Heirs* v. *Taylor*, 3 Marsh. 225; *Chapman* v. *Bennett*, 2 Leigh's Rep. 329."

We have held that, construing the note, the condition thereto, and contract referred to therein together, it appeared therefrom that the parties did not intend that Durland should defeat a recovery on the note by surrendering the contract, but that the note should not be payable if such contract was terminated in one of the modes therein provided for. This is the legal effect of the language used. The effect of the facts averred in the answer would be to change and alter the terms of the contract by changing the legal effect thereof by introducing new conditions and stipulations, which are not expressed in the written agreement between the parties. This would violate the firmly settled rule that where a contract is reduced to writing, the legal presumption is, that the entire contract, as finally settled, is embraced therein,

and all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves. It would also violate the established rule that a contract is to be construed according to the real intention of the parties, to be collected, in most cases, from the terms of the contract itself. There is no such ambiguity as would justify the introduction of parol evidence.

We have, after careful examination and thoughtful consideration, found no error in the record.

The judgment is affirmed, with costs.