# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

## AT INDIANAPOLIS, NOVEMBER TERM, 1882, IN THE SIXTY-SEVENTH YEAR OF THE STATE.

### No. 9948.

## WELZ v. RHODIUS.

CONTRACT.—*Collateral Agreement.*—*Consideration.*—A parol agreement, collateral to and distinct from a written contract between the same parties, made in consideration of the execution of the writing, may be vaild.

SAME.—*Written Lease.*—*Evidence.*—*Good-Will.*—*Restraint of Trade.*—The lessor, in a written lease of a hotel, may bind himself by a contemporaneous parol agreement, made in consideration of the execution of the lease, not to engage in a rival business in the same city; and in an action by the lessee for damages for the violation of such agreement by the lessor, and for injunctive relief, parol evidence of the agreement is competent.

SAME.—*Statute of Frauds.*—An agreement not to engage in a rival business is not within the statute of frauds.

SAME.—*Fraud.*—*Misrepresentation of Intention.*—*Equitable Relief.*—A false representation as to a matter of intention, as by a lessor of a hotel of his intention not to conduct a rival house, is not a fraud in law, and, as such, affords no ground for equitable relief.

From the Superior Court of Marion county.

*A. C. Harris, W. H. Calkins, A. B. Young* and *H. W. Harrington,* for appellant.

*W. Wallace, L. Wallace, R. B. Duncan, C. W. Smith* and *J. S. Duncan,* for appellee.

WOODS, C. J.—Complaint in two paragraphs by the appellant against the appellee. The court sustained a demurrer for want of facts to each paragraph, and gave judgment for the defendant.

It is alleged in the first paragraph, that, on the 18th day of March, 1878, the plaintiff purchased of the defendant, at the price of $6,000, the furniture and fixtures of the Circle House, a hotel in Indianapolis, then and theretofore owned and conducted by the defendant, and at the same time accepted of the defendant a lease of the hotel and premises for the term of five years, commencing May 1st, 1878, with the privilege of renewal for a second and third term of five years each, at an annual rental of $6,000. A copy of the lease is set out in the body of the paragraph. It contains a number of stipulations in reference to underletting, repairs, insurance, forfeiture, and the like matters, relevant to the occupation and use of the leasehold, among them the following, which is emphasized by counsel, to wit:

*Ninth.* It is agreed that the lessor shall retain at her pleasure the furniture in rooms Nos. 6 (private parlor), 7 and 11 in said hotel, and the use of rooms Nos. 7 and 11 without charge; and that she and one other person (a son) shall be boarded by said lessee during the continuance of this lease without charge.

It is further averred:

" That at the time of purchasing the said furniture and of leasing said hotel by the plaintiff of and from the defendant, in consideration that the plaintiff would purchase said furniture and lease said property for the term of five years, with the privilege of renewal, at the rental of $6,000 per annum, payable in instalments of $500 per month, the said defendant agreed to and with the plaintiff, verbally, that she would not, at any time thereafter, permanently establish, open, or keep, or cause to be kept, a hotel in the city of Indianapolis. * * And, further, in consideration of said leasing of said property by said defendant to said plaintiff, and of the purchase of said hotel furniture by him, the defendant further

agreed to remain and board at said hotel, and to use her influence to aid in retaining the guests of the house, and their patronage, for the plaintiff, at said hotel; and, but for such understanding and agreement, this plaintiff would not have purchased said furniture, nor opened a hotel in Indianapolis."

It is next made to appear that the defendant, in violation of her agreement, after the plaintiff commenced business, erected close to and adjoining the Circle House another hotel, which she opened in August, 1879, and from thence carried on as a public hotel called "Circle Park Hotel," in opposition to the "Circle House;" that she did not remain with the plaintiff and use her influence to induce guests to patronize his hotel, but removed to her own hotel, and endeavored to, and did, draw away from the plaintiff great numbers of guests, patrons and customers of the "Circle House;" that she adopted the name "Circle Park Hotel" for the purpose of deceiving the public and drawing them to her own hotel; that she further has placed upon the front of her own hotel the name "Circle Park Hotel," and also the name "Rhodius," whereby many people and patrons and guests of the Circle House have been and will be deceived and drawn to her hotel, who otherwise would have become guests and patrons of the plaintiff's hotel; that she has also advertised her hotel under the name aforesaid, and has by this and other means greatly injured the plaintiff, whereby his patronage has been greatly lessened and diminished; his leasehold has been rendered of but little value as a hotel, which, by the terms of his lease, he is prevented from using for any other purpose; and his business has been greatly injured and destroyed, to his damage in the sum of $20,000, for which he prayed judgment, and all proper, including injunctive, relief.

The second paragraph states, in addition to the main facts set forth in the first, that the defendant, to induce him to buy the furniture and take the lease, falsely and fraudulently represented that she wished and intended to retire from business and remain in the hotel and live on her income, and did not

intend to, and would not, carry on a hotel if he would buy, the furniture and lease the hotel, and that he should have the good-will and her influence; and that, to give color to her false and fraudulent representations, she reserved the *rooms*, etc., as set out above; that, as a *fact*, at the time of making these statements, she did intend to open and carry on another hotel, in case she succeeded in inducing plaintiff to buy the furniture and take the house, and to withdraw from him the patronage of her old customers and patrons; that he believed her statements to be true, and fully relied thereon, and so closed the transaction, without which he would not have done so; that, soon after he took possession, she left his hotel, opened another quite adjacent, used all her endeavors to, and succeeded in withdrawing to herself the custom and patrons of the Circle House, and has so continued and intends to continue to maintain a rival hotel, thereby damaging him, etc.

The only question under the first paragraph which counsel have discussed is whether or not the alleged parol agreement was merged in the written lease.

Counsel for the appellee insist that the paragraph " undertakes to set up a contemporaneous parol agreement to control the terms of the written lease, in violation of the familiar rule that ' When a contract has been finally committed to writing all prior negotiations and stipulations between the parties are merged in that writing, and to that alone can the court refer to find what are the rights and obligations of the parties.' " Besides the texts of Greenleaf and Phillipps (1 Greenl. Ev., secs. 275, 285; 2 Phil. Ev.—C. H. & E. notes—pp. 558, 593), they cite: *Irwin* v. *Lee*, 34 Ind. 319; *Kieth* v. *Kerr*, 17 Ind. 284; *Durland* v. *Pitcairn*, 51 Ind. 426; *McClure* v. *Jeffrey*, 8 Ind. 79; *Johnson* v. *McCabe*, 37 Ind. 535; *French* v. *Turner*, 15 Ind. 59; *Oiler* v. *Gard*, 23 Ind. 212; *Coleman* v. *Hart*, 25 Ind. 256; *Cincinnati, etc., R. R. Co.* v. *Pearce*, 28 Ind. 502; *King* v. *Enterprise Ins. Co.*, 45 Ind. 43; *Smith* v. *Dallas*, 35 Ind. 255; *Bingham* v. *Rogers*, 6 Watts & S. 495; *Small* v. *Quincy*, 4 Greenl. 497; *Hamilton* v. *Wagner*, 2 Marsh.

(Ky.) 331; *Smith* v. *Williams*, 1 Murph. 426; *Mumford* v.
*McPherson*, 1 Johns. 414 (3 Am. Dec. 330); *Van Ostrand* v.
*Reed*, 1 Wend. 424; *Turner* v. *Cool*, 23 Ind: 56; *Lazear* v.
*National Union Bank*, 52 Md. 78 (36 Am. R. 355); *Loxley* v.
*Heath*, 1 De G. F. & J. 489. And upon the doctrine that
the consideration of a deed or contract may be shown by
parol, they make a distinction.' They say:

" The language of a deed with reference to the consideration
is not contractual; it is merely by way of a recital of a fact,
viz.: the amount of the consideration, and not at all an agree-
ment to pay it—and such recitals of fact may be contradicted.
1 Greenl. Ev., sec. 285. But the very moment the stipulation
as to the consideration in a deed becomes contractual, and
there is either a direct and positive promise to pay the con-
sideration named, or an assumption of an encumbrance which
becomes binding on the grantee by its acceptance, then the
ordinary rules with reference to contracts apply, and the con-
sideration expressed in a deed can no more be varied by parol
than any other portion of a written contract. *Hubbard* v.
*Marshall*, 50 Wis. 322; *Van Wy* v. *Clark*, 50 Ind. 259."

Not disputing the general rule that parol testimony can
not be received to vary, contradict, add to or subtract from
the terms of a valid written instrument, counsel for the ap-
pellant argue that the case is not within the rule; that the
parol contract declared on is a separate contract, collateral
only to the lease, in no manner tending to modify or affect
any stipulation in the lease or right or obligation created by
it; that the parol promise of the defendant was made in con-
sideration that the plaintiff would purchase the hotel furni-
ture and accept the lease of the hotel itself on the terms
named in the writing, and, otherwise than this, is an inde-
pendent contract. We concur in this view.

The cases are numerous in which this court has recognized
and declared the admissibility of parol evidence to show the
real consideration of a deed, mortgage, or other written con-
tract, whether in form unilateral or *inter partes*, and that the

consideration may be shown to have been different from that expressed in the writing. See *McMahan* v. *Stewart*, 23 Ind. 590; *Carter* v. *State, ex rel.*, 32 Ind. 405; *Shirts* v. *Irons*, 37 Ind. 98; *Heller* v. *Crawford*, 37 Ind. 279; *Frederick* v. *Devol*, 15 Ind. 357; *Harris* v. *Harris*, 69 Ind. 181; *Peabody* v. *Peabody*, 59 Ind. 556; *Norman* v. *Norman*, 11 Ind. 288; *Rockhill* v. *Spraggs*, 9 Ind. 30; *Thompson* v. *Thompson*, 9 Ind. 323; *Jones* v. *Jones*, 12 Ind. 389; *Mather* v. *Scoles*, 35 Ind. 1; *Carver* v. *Louthain*, 38 Ind. 530; *McDill* v. *Gunn*, 43 Ind. 315; *Robinius* v. *Lister*, 30 Ind. 142; *Pitman* v. *Conner*, 27 Ind. 337; *Stearns* v. *Dubois*, 55 Ind. 257; *Heavilon* v. *Heavilon*, 29 Ind. 509; *Harvey* v. *Million*, 67 Ind. 90; *McCracken* v. *Hall*, 7 Ind. 30.

The proposition of counsel for the appellee, that, when the consideration expressed is " contractual," it " can no more be varied by parol than any other portion of a written contract," is true, but not to the extent which counsel seem to claim.

If A. and B. bind themselves in writing by mutual promises, saying nothing of any other consideration, it is clear that nothing can be shown by parol to vary the meaning or force of the promise of either party; nevertheless, it may be shown that in consideration of the making of the written contract A. surrendered, or agreed by parol to surrender, for cancellation, an obligation which he held against B. The contract made, the promise given by either party, as expressed in the writing, can not be modified; but further or additional consideration may be shown, even though it consist of a promise of one party to the other, if it be to do something outside of and so far distinct from the written promise or contract as that the latter is not varied or modified.

The case before us, however, does not, strictly speaking, involve proof of an additional consideration for the written lease beyond that expressed therein. On the contrary, the consideration of the parol promise sued on is shown to have been the lease itself and the purchase by the appellant of the hotel furniture and fixtures. In the language of the com-

plaint: " In consideration that the plaintiff would purchase said furniture and lease said property," etc., " the said defendant agreed to and with the plaintiff, verbally," etc. This is clearly a collateral undertaking, which in no manner restricts or enlarges any stipulation of the lease, or any obligation of either party, in respect to the subject-matter of that instrument. If, at the same time the lease was made, the parol agreement had been reduced to writing, in a separate instrument, and signed by the parties, it would be regarded as a collateral contract, not necessary to be referred to in any pleading based upon the lease; and it is no less a separate and collateral contract because made by parol.

There is, as we conceive, no more reason for saying that the written lease excludes the proof of the alleged parol promise, than that it would also exclude proof of the contract for the sale of the furniture, if there had arisen a dispute between the parties in reference to that contract; as, for instance, if the plaintiff had claimed that he did not get possession of all the articles purchased. If the agreement not to keep another hotel is merged in the lease, it may just as well be said that the contract for the sale of the furniture is likewise merged. That such collateral agreements may be enforced has been often judicially declared.

The following cases are cited by counsel as being more or less in point: English: *Morgan* v. *Griffith,* L. R. 6 Exch. 70; *Lindley* v. *Lacey,* 17 C. B. N. S. 578; *Davis* v. *Jones,* 17 C. B. 625; *Wallis* v. *Littell,* 11 C. B. N. S. 369; *Pym* v. *Campbell,* 6 Ellis & B. 370; *Harris* v. *Rickett,* 4 H. & N. 1; *Brady* v. *Oastler,* 3 H. & C. 112; *Malpas* v. *London, etc., R. W. Co.,* 1 H. & R. 227; *Allen* v. *Pink,* 4 M. & W. 140; *Jeffery* v. *Walton,* 1 Stark. 213; *White* v. *Parkin,* 12 East, 578; *Erskine* v. *Adeane,* L. R. 8 Ch. Ap. 756 (S. C. 6 Moak's Eng. R. 594); *Angell* v. *Duke,* L. R. 10 Q. B. 174 (S. C. 12 Moak's Eng. R. 236 and *n*); *Mann* v. *Nunn,* 43 L. J. C. P. 241. American: *Harvey* v. *Million,* 67 Ind. 90; *Doty* v. *Martin,* 32 Mich. 462; *Pierce* v. *Woodward,* 6 Pick. 206; *Hubbard* v. *Marshall,* 50

Wis. 322; *Frey* v. *Vanderhoof*, 15 Wis. 397; *Ballston Spa Bank* v. *Marine Bank*, 16 Wis. 120; *Jones* v. *Keyes*, 16 Wis. 562; *Hahn* v. *Doolittle*, 18 Wis. 206; *Miller* v. *Fichthorn*, 31 Pa. St. 252; *Fiske* v. *McGregory*, 34 N. H. 414; *Coates* v. *Sangston*, 5 Md. 121; *Knight* v. *Knotts*, 8 Rich. (Law) 35; *Phillips* v. *Preston*, 5 How. 278; *"Joannes"* v. *Mudge*, 6 Allen, 245; *Weaver* v. *Wood*, 9 Pa. St. 220; *Powelton Coal Co.* v. *McShain*, 75 Pa. St. 238; *Shughart* v. *Moore*, 78 Pa. St. 469; *Barry* v. *Ransom*, 12 N. Y. 462; *Witbeck* v. *Waine*, 16 N. Y. 532; *Kernochan* v. *New York Bowery F. Ins. Co.*, 17 N. Y. 428; *Silliman* v. *Tuttle*, 45 Barb. 171; *Hutchings* v. *Hebbard*, 34 N. Y. 24; *Hope* v. *Balen*, 58 N. Y. 380; *Lewis* v. *Seabury*, 74 N. Y. 409 (30 Am. R. 311; *Chapin* v. *Dobson*, 78 N. Y. 74 (34 Am. R. 512), in which the case of *Morgan* v. *Griffith*, and others, cited above, are followed.

Mr. Stephen, in his digest of the Law of Evidence, after stating the rule that oral evidence is inadmissible to contradict, alter, add to or vary the terms of a written contract, grant or other disposition of property, adds five exceptions, the second being as follows:

"2. The existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them." Art. 90.

In discussing this rule Taylor, in his treatise on the Law of Evidence, says:

"The rule * does not prevent parties to a written contract from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter. Still less, as will presently be shown, does the rule exclude evidence of an oral agreement, which constitutes a condition on which the performance of the written agreement is to depend." Sec. 1038.

Again, the same author says: "It is almost superfluous to

observe, that the rule is not infringed by proof of any collateral parol agreement, which does not interfere with the terms of the written contract, though it may relate to the same subject-matter." Sec. 1049.

Greenleaf says: "Nor does the rule apply in cases where the original contract was verbal and entire, and a part only of it was reduced to writing." 1 Greenl. Ev., sec. 284*a*.

ERLE, C. J., in *Lindley* v. *Lacey, supra,* states the rule thus: "If the instrument shows that it was meant to contain the whole bargain between the parties, no extrinsic evidence can be admitted to introduce a term which does not appear there. But, if it be clear that the written instrument does not contain the whole, and the jury find that there was a distinct collateral verbal agreement between the parties, not inconsistent with the written contract, the law does not prohibit such distinct collateral agreement from being enforced. In some of the cases,—as in *Harris* v. *Rickett,* 4 Hurlst. & N. 1,—there was a prior verbal agreement. In *Davis* v. *Jones,* 17 C. B. 625, the oral and the written agreement were contemporaneous. So, in *Wallis* v. *Littell,* 11 C. B. N. S. 369, there was a contemporaneous oral agreement. * * * It is clear, therefore, that, if there be a distinct collateral oral agreement between the parties, it is immaterial whether it precedes or is contemporaneous with the written agreement."

In *Erskine* v. *Adeane, supra,* MELLISH, L. J., said: "No doubt, as a rule of law, if parties enter into negotiations affecting the terms of a bargain, and afterwards reduce it to writing, verbal evidence will not be admitted to introduce additional terms into the agreement; but, nevertheless, what is called a collateral agreement, where the parties have entered into an agreement for a lease or for any other deed under seal, may be made in consideration of one of the parties executing that deed, unless, of course, the stipulation contradicts the terms of the deed itself."

In *Shughart* v. *Moore,* 78 Pa. St. 469, the tenant sued the landlord, averring, in substance, that the landlord agreed

with him if he would tend a certain farm on the shares, he, the landlord, would build a barn for his use by harvest, and that he failed to do so, to his damage.

SHARSWOOD, J., in reversing the case, said:

"The cases of *Weaver* v. *Wood*, 9 Barr, 220, and *Powelton Coal Co.* v. *McShain*, 25 P. F. Smith, 238, are full to the point that the offer of evidence complained of in the first assignment of error ought to have been received. These cases settle beyond all question that where a promise is made by one party in consideration of the execution of a written instrument by the other, it may be shown by parol evidence."

In the last edition of Taylor on the American Law of Landlord and Tenant, after stating the general rule, it is said:

"But distinct and separable provisions, whether contemporaneous with or prior to the execution of a deed or written lease, will not be merged therein if clearly collateral." Section 44. Also see cases of *Chapin* v. *Dobson, supra ; Angell* v. *Duke, supra; Mann* v. *Nunn, supra.*

We regard these as sound and accurate declarations of a principle, entirely consistent with and involving no invasion of the general rule which forbids the admission of parol testimony to vary a writing.

It may be that, upon the facts of some of the cases cited and quoted from, we would agree with counsel for the appellee that the parol evidence offered and admitted ought to have been excluded as inconsistent with the written agreements of the parties; but, however this may be, the case before us is a clear one, and involves no departure from established principles.

The case of *Welshbillig* v. *Dienhart*, 65 Ind. 94, is urged upon our attention by the appellee; but, conceding the case to be well decided, we do not consider it at all in the way of our present conclusion. The parol agreement there set up was for certain improvements and repairs upon the leased premises, and so the court said of the plea: "It seeks to change a written contract by a verbal contract previously made." The

written and parol contracts in that case were concerning the same subject, the leased property; while in the present case they have no connection, except that the parol agreement was made in part in consideration of, that is to say, for the sake of, procuring the execution of the lease. See, in this connection, *Wilson* v. *Deen*, 74 N. Y. 531, which in principle is not unlike *Welshbillig* v. *Dienhart, supra,* and recognizes the distinction which we make between that case and this one.

Upon the authority of *Kieth* v. *Kerr, Irwin* v. *Lee, supra,* and other cases, it is claimed that it must appear on the face of the written contract that it is incomplete, in order that parol testimony may be admitted for the purpose, not of contradicting what is expressed, but of showing the whole contract. This we do not dispute, but do not deem it applicable here, where the effort is not to add anything to, or to supply any omission in, the lease. That instrument seems to be as the parties intended to make it; and the alleged parol agreement is so far separate that either may be enforced without effect upon the other.

To illustrate further the collateral character of this agreement, let us suppose that instead of the appellee it had been a third person, who, upon consideration of the acceptance of this lease and purchase of the hotel furniture of the appellee by the appellant, had promised to retire and refrain from keeping hotel in Indianapolis. It is too clear for argument that such an agreement, though resting on the same consideration as the one pleaded, would be distinct from the lease, and could not be deemed to vary or affect in any way the terms of that instrument. The two agreements are no less distinguishable from each other because both made between the same parties. Counsel do not, as we understand them, deny that, if the appellee had conveyed the property in fee to the appellant, specifying in the deed the price in money paid or *agreed* to be paid, it would have been competent to show such additional agreement, by parol, as is alleged; and the fact that an estate for years was created by a lease, wherein

the payment of rent and other matters appropriate to be found in such a writing are provided for, and the lease signed by both parties, does not seem to us to make the case essentially different in this respect.

The alleged promise of the appellee not to engage in a rival business was not void under the statute of frauds, because not in writing, as see the following authorities: *Doyle* v. *Dixon*, 97 Mass. 208; *Lyon* v. *King*, 11 Met. 411; *Hill* v. *Hooper*, 1 Gray, 131; *Worthy* v. *Jones*, 11 Gray, 168; *Peters* v. *Westbrough*, 19 Pick. 364; *Wiggins* v. *Keizer*, 6 Ind. 252; *Hill* v. *Jamieson*, 16 Ind. 125.

Upon the theory on which it is predicated, we do not consider the second paragraph of the complaint good. We approve the following statement of the law by Mr. Kerr, who, in his work on Fraud and Mistake, pp. 88–90, says:

"As distinguished from the false representation of a fact, the false representation as to a matter of intention, not amounting to a matter of fact, though it may have influenced a transaction, is not a fraud at law, nor does it afford a ground for relief in equity. Where a man was induced to grant a lease of certain premises to another, upon a representation that he intended to use the premises for a stated purpose, whereas he intended to use and did use them for a different and illegal purpose, it was held that the misrepresentation did not entitle the lessor to have the lease avoided. So, also, where a man who had given a bond to another, upon which judgment had been entered up, had married upon the declaration of the person who held the bond and warrant of attorney, that she had abandoned the claim, and would never trouble him about it, the court would not restrain her from enforcing at law the judgment on the warrant of attorney. * * * A representation which amounts to a mere expression of intention must be distinguished from a representation which amounts to an engagement. If a representation amounts to an engagement, the party making it is bound in equity to make it good. * * * A representation which amounts to an engagement is

enforced not as being a representation of an intention, but as amounting to a contract. There is no middle term, no *tertium quid,* between a representation so made to be effective for such a purpose and being effective for it and a contract."

If the representations were such as to amount to a promise, the proof of them would go to support the first paragraph of the complaint; in which view the second paragraph is unnecessary, and the ruling on the demurrer thereto immaterial and harmless.

Judgment reversed, with instructions to overrule the demurrer to the first paragraph of the complaint.

ELLIOTT, J., did not participate in this decision.

Petition for a rehearing overruled.