ARMSTRONG *v.* UNION TRUST COMPANY.

Opinion delivered June 29, 1914.

1. EVIDENCE—WRITTEN CONTRACT—PAROL EVIDENCE TO VARY.—Parol evidence is inadmissible to vary, qualify or contradict, to add to or to subtract from the absolute terms of a valid written contract containing no ambiguity. (Page 517.)

2. LEASES—WRITTEN CONTRACT—PAROL EVIDENCE TO VARY.—Appellant entered into a written lease with appellee, the lessor; *held*, in the absence of a showing of any false representations by appellee, upon which appellant relied to his damage, appellant will not be permitted to rescind the lease on the ground that appellee violated an oral agreement between the parties not to let other portions of the leased premises, for certain purposes. (Page 518.)

3. CONTRACT OF LEASE—COMPLETE IN ITSELF—PAROL EVIDENCE TO VARY.—Where a lease, as set forth in plaintiff's complaint, shows a complete contract includes all the particulars necessary to make a perfect contract, and where there is nothing on its face to indicate that it was not designed to express the whole agreement between the parties thereto, parol testimony to vary the same is inadmissible. (Page 518.)

4. CONTRACTS—CONSIDERATION—PAROL EVIDENCE.—Parol testimony is always admissible for the purpose of showing what the real consideration is, in a deed or other writing evidencing a contract; but it can not be introduced to show that there was no consideration, or to show a consideration that would have the effect to render the deed or writing void. (Page 519.)

5. CONTRACTS—PAROL EVIDENCE TO VARY.—It is improper to show by parol any agreement or assurance, contractual in its nature, to be performed in the future by the lessor of certain premises, and which was not expressed in the written contract of lease, and which necessarily tends to vary, alter and contradict the terms of the written lease, by showing different obligations and covenants on the part of the appellee from those expressed in the written contract. (Page 519.)

6. LEASES—COVENANTS—LEASE FOR IMMORAL PURPOSE—LICENSED SALOON. —The leasing of a building for a licensed saloon is not *per se* leasing for an immoral purpose in a legal sense. (Page 520.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On August 5, 1913, the Union Trust Company, as trustee for A. D. Cohn, brought suit in the Pulaski Cir-

cuit Court against W. F. Armstrong, doing business under the firm name of Armstrong Shoe Company. We shall hereafter designate the Union Trust Company, appellee, as lessor, and W. F. Armstrong (the Armstrong Shoe Company), appellant, as the lessee.

The lessor alleged that it rented a certain store room in the city of Little Rock to the lessee for a term of five years from April 15, 1912, at the rate of $1,800 per annum for the first three years of said lease and at the rate of $2,400 per annum during the remaining two years, all of said rents to be paid monthly in advance during the continuance of the lease. It alleged that the lessee had paid his rent up to April 15, 1913, and had refused to pay any further; that the sum of $600 was due, for which it prayed judgment.

On August 11, 1913, the lessee brought suit in the Pulaski Chancery Court against the lessor. The lessee set up in his complaint the written lease; alleged that a material consideration for the obligations entered into under the lease was an agreement and assurance on the part of the lessor that in consideration of the obligations assumed by the lessee the lessor would not allow any whiskey sold or saloon operated in the building; that it would not rent any of the store rooms of said building at less than $100 and $125 per month; that the lessee accepted the obligations of the lease upon his part upon the above express agreements of the lessor, which agreements were not contained in the written lease, but were vital considerations to the lessee in the acceptance of the lease with its obligations on his part; that these oral agreements were intended to be a part of the contract as well as if they had been expressed in the written contract of lease; that the lessor had violated the above agreement by renting various store rooms in the building to different parties at a lower rate of rental per month than it had contracted with the lessee to do. The lessee alleged that the violation of the agreement in regard to the rental of the other store rooms in the building was inimical to the business of the lessee and was a fraud that entitled the

lessee to be relieved from the obligations assumed by him under the lease. He set up that he had not paid the rents for three months past; that he gave up the possession of the property and tendered the same to the lessor, which was refused, and he offered in court to surrender the possession of the property, and prayed that, pending the hearing, the same might be rented under the orders of the court, and asked that the court cancel the lease. Later he amended his complaint, setting up that the lessor itself held the property under a lease for ninety-nine years, which provided that the property should never be used for any immoral purposes; that the lessee relied on the provisions of that lease in accepting his sub-lease of the store room involved; that in violation of such provision the lessor had rented two rooms of the building to saloons of a low order, where immoral practices were indulged by negro men and negro women and white men who resorted there.

The lessee filed a motion in the circuit court to transfer the case pending there to the chancery court, setting up that he had brought suit in the chancery court to cancel the lease under which the lessor had brought suit for rents and surrendered the possession of the property to the chancery court, and asked that the circuit court transfer the cause to the chancery court where he could make his equitable defense and where one suit would terminate the entire contention between the parties. The circuit court granted the motion, and by agreement the two causes were consolidated and heard as one in the chancery court.

The lessor demurred to the complaint of the lessee asking for the cancellation of the lease, on the ground that it did not state facts sufficient to constitute a cause of action. It also answered, denying specifically the allegations of the complaint with reference to the oral agreements and assurances, and setting up that the written lease attached contained the entire agreement of the parties relative to the leasing of the premises; that it

was a complete agreement, and that it could not be varied or its terms added to by parol testimony.

By way of cross complaint, it set up that the lessee owed for rent covering a period from April 15 to November 15, 1913, which he refused to pay, and asked that the lessee's complaint be dismissed for want of equity, and that it have judgment for the rents due up to and including November 15, 1913.

The lessor, also, in an amendment to its answer, denied the allegations of the lessee's amendment to his complaint. It alleged that the alleged oral agreements and assurances relative to the rental of the store room were unenforceable because not in writing, and also because they sought to charge the lessor upon a lease of land for a longer term than one year, and because there was no memorandum, note or writing signed by the party to be charged, and the lessor therefore plead the statute of frauds.

The lessor also demurred to the amendment to the complaint of the lessee, in which it set up the lease from Bishop Morris to the lessor, because the amendment did not state facts sufficient to constitute a cause of action.

After the testimony was all adduced the lessor moved to strike out all the testimony of the witnesses for the lessee relative to the alleged oral agreements and also all the testimony relative to the provisions of the lease from the bishop to the lessor, alleging that all such testimony was incompetent.

The chancellor found that the lease in controversy is valid and free from fraud and should not be cancelled or set aside, and that the lessor had not violated or broken any agreements relative thereto, and dismissed the complaint of the lessee for want of equity, and rendered a decree in favor of the lessor for the amount of the rents due under the contract at the time of the rendition of the decree. To reverse that decree this appeal has been duly prosecuted.

*Mehaffy, Reid & Mehaffy* and *Baldy Vinson,* for appellant.

1.   This is not an attempt to vary a written contract by parol, but is a contention that the consideration for entering into the contract in the first instance has been so flagrantly denied that it amounts to an eviction.   A collateral parol agreement may exist independent of the written lease and may be proved by parol.   5 Elliott on Cont., § 4549; 87 Ind. 1; 44 Am. Rep. 747; 61 N. Y. Supp. 235; 106 Mass. 201; 132 *Id.* 367; 74 Am. Dec. 108; 66 Mich. 326; 33 N. W. 502; 14 How. Pr. 155; 35 Pac. 748; 5 Houst. 135.

2.   The building should not be used for immoral purposes says the lease.   This is a covenant running with the land.   46 Ga. 241; 86 Ky. 156; 3 Edw. Chy. 96; 2 Pa. Dist. Rep. 785; 6 Pick. 26.

*Cockrill & Armistead,* for appellee.

1.   Where a contract is reduced to writing no parol testimony is admissible to change, contradict, or add to, the writing.   21 A. & E. Enc. 1090; 21 *Id.* 1096; 12 Oh. St. 201; 15 Ark. 543; 24 *Id.* 210; 29 *Id.* 544; 35 *Id.* 156; 29 *Id.* 67; 30 *Id.* 186; 80 *Id.* 505; 95 *Id.* 135; 38 Ark. 344, our leading case.

2.   The election to rescind came too late.   17 Ark. 228; 35 *Id.* 483.

3.   There was no constructive eviction.   8 Mo. App. 329; Taylor, Landlord & Tenant, § 509; 12 Wend. 532; 5 Hill, 54.   But if there was, it was waived.   24 Cyc. 1130, 1152-5; 24 *Id.* 1134; 56 N. W. 423.

WOOD, J., (after stating the facts).   So far as appellant is concerned, this suit must be treated as an effort on his part to cancel a written lease, which he sets out in his complaint, and to escape its obligations by showing that at the time the lease was entered into and as a consideration which induced appellant to enter into the contract appellee made certain verbal agreements, not expressed in the contract, to the effect that it would not rent other store rooms in the same building below certain

prices, and would not permit them to be used for immoral purposes, which verbal agreements and assurances appellee had not complied with.

The appellee is resisting this effort of appellant, and, on its part, is seeking to have the contract as written enforced. The issue, therefore, presented by the pleadings is whether or not the lessee can escape the obligations of the lease on his part or have the same cancelled by parol testimony tending to prove the oral agreements alleged. To sustain his contention that such testimony is admissible, appellant cites and relies upon the case of *Welz* v. *Rhodius*, 87 Ind. 1. In that case the defendant sold to the plaintiff certain hotel furniture and fixtures for the sum of $6,000. The contract was in writing. It was alleged, among other things, in the complaint in that case, that at the time of purchasing the furniture and leasing the hotel by plaintiff from the defendant the latter agreed "that she would not at any time thereafter permanently establish, open or keep, or cause to be kept, a hotel in the city of Indianapolis," and further agreed "to remain and board at said hotel and to use her influence to aid in retaining the guests of the house and their patronage for the plaintiff at said hotel," and, "but for such understanding and agreement the plaintiff would not have purchased the furniture nor opened a hotel in Indianapolis." It then alleged that the defendant had violated her agreement by erecting another hotel close to the hotel she had leased to plaintiff, and had thus drawn away customers from the plaintiff, who would otherwise have become guests of the plaintiff's hotel, whereby plaintiff's business had been greatly injured, to his damage in the sum of $20,000.

The second paragraph, after setting up the main facts as set forth in the first, alleged "that the defendant, to induce him to buy the furniture and take the lease, falsely and fraudulently represented that she wished and intended to retire from business and remain in the hotel and live on her income, and did not intend to and would not carry on a hotel if the plaintiff would buy

the furniture and lease the hotel, and that he should have the benefit of her good will and influence; that he believed her statements to be true and fully relied thereon and closed the transaction, without which he would not have done so; that soon after plaintiff took possession under the contract of lease defendant left her hotel and opened another adjacent thereto, and used all her endeavors to and succeeded in withdrawing to herself the customers and patrons of the hotel which defendant had leased to the plaintiff, to his damage," etc. The court held that the first paragraph of the complaint stated a cause of action, among other things, saying: "The case before us, however, does not, strictly speaking, involve proof of an additional consideration for the written lease beyond that expressed therein. On the contrary, the consideration of the parol promise sued on is shown to have been the lease itself and the purchase by the appellant of the hotel furniture and fixtures. In the language of the complaint, 'In consideration that the plaintiff would purchase said furniture and lease said property, the said defendant agreed to and with the plaintiff verbally,' etc. This is clearly a collateral undertaking, which in no manner restricts or enlarges any stipulation of the lease, or any obligation of either party, in respect to the subject-matter of that instrument. If, at the same time the lease was made, the parol agreement had been reduced to writing, in a separate instrument, and signed by the parties, it would be regarded as a collateral contract, not necessary to be referred to in any pleading based upon the lease; and it is no less a separate and collateral contract because made by parol. * * * If the agreement not to keep another hotel is merged in the lease, it may just as well be said that the contract for the sale of the furniture is likewise merged. That such collateral agreement may be enforced has been often judicially declared."

Further along in the opinion the court said, concerning the lease: "That instrument seems to be as the parties intended to make it, and the alleged parol agreement,

is so far separate that either may be enforced without effect upon the other.''

It thus appears that in the case relied upon the plaintiff, who was the lessee, was not seeking to cancel the written lease under which he held, nor to escape its obligations, but he based his suit upon a parol collateral agreement which he alleged was a consideration and inducement for the written lease, and that he was damaged on account of the violation of the terms of this parol agreement. The opinion is too long to quote in full, but the above excerpts show clearly that the basis for holding that the first paragraph of the complaint stated a cause of action was that it set up a parol agreement that was collateral to the written lease, and based the action for damages growing out of a violation of the terms of this collateral agreement. On this theory the court held, of course, ''that the parol contract declared on is a separate contract, collateral only to the lease, in no manner tending to modify or affect any stipulation in the lease or right or obligation created by it; that the parol promise of the defendant was made in consideration that the plaintiff would purchase the hotel furniture and accept the lease of the hotel itself on the terms named in the writing, and, otherwise than this, is an independent contract.''

Now, if this were a suit for damages by appellant against the lessor, appellee, upon a parol contract, the consideration for which was the written lease in controversy, and collateral to such lease, and for a violation of which collateral agreement appellant was seeking to recover damages, and to restrain appellee, the case would be analogous to the case of *Welz* v. *Rhodius, supra.* But here appellant is seeking to cancel a written contract or lease entered into by him with the appellee on the ground that there was a parol agreement made in connection with, and as a consideration for it, to the effect that appellee promised to do certain things in the future which it had not done, and which rendered the lease contract void for fraud.

There is no allegation in appellant's complaint to the effect that the appellee made any false representations as to existing or past facts by which appellant was deceived and upon which he relied, and that the contract was entered into upon the strength of such representations, which afterward proved to be false. In other words, there are no allegations sufficient to show that the appellee perpetrated a fraud upon appellant in inducing him to enter into the contract. The appellant does not allege matters sufficient to show intentional false and misleading representations such as would have constituted a tort outside of the written contract and which he could have proved by parol. See *Hanger* v. *Evins,* 38 Ark. 334.

We see nothing, therefore, in the allegations of appellant's complaint to take it out of the familiar rule announced by this court in *Delaney* v. *Jackson,* 95 Ark. 135, as follows: "Parol evidence is inadmissible to vary, qualify or contradict, to add to or subtract from, the absolute terms of a valid written contract containing no ambiguity."

Chief Justice Shaw aptly states the rule as follows: "The rule of law is well established that parol evidence can not be admitted to alter, vary or control a written contract nor to annex thereto a condition or defeasance not appearing on the contract itself. The rule is founded on the long experience that written evidence is so much more certain and accurate than that which rests in fleeting memory, only that it would be unsafe when parties have expressed the terms of their contract in writing to admit weaker evidence to control and vary the stronger and to show that the parties intended a different contract from that expressed in the writing signed by them." *Underwood* v. *Simonds,* 12 Metc. 275.

Our court has over and over again announced the rule. See cases cited in appellee's brief.

In 21 A. & E. Enc. Law, 1091, it is stated: "When the writing does not purport to disclose the complete contract, or if, when read in the light of the attendant facts

and circumstances, it is apparent that it does not contain the stipulation of the parties on the subject, the rule does not apply, for when it thus appears that a part of a complete oral contract, not within the statute of frauds, has been reduced to writing, parol evidence is always admissible to show what the rest of the agreement was, otherwise the contract would not be brought before the court."

Here the lease as set forth in the appellant's complaint shows a complete contract. It includes all the particulars necessary to make a perfect contract, and there is nothing on its face to indicate that it was not designed to express the whole agreement between the parties thereto. There is nothing in the written contract itself, therefore, that would authorize or call for the admission of parol testimony.

In *Kelly* v. *Carter,* 55 Ark. 112, some negroes were about to build a church on a certain lot owned by them. Kelley, who owned land adjacent to this lot, purchased the same from the negroes, agreeing to pay them $500 therefor, and upon the additional consideration that the negroes would not build their church upon any lot in the vicinity. The deed was executed to Kelley and the consideration therein named was $500, but the consideration in regard to not building the church in the vicinity was not mentioned in the deed. The negroes were about to build the church house on a block in the vicinity of the lots owned by Kelley and he brought suit to restrain them, setting up the above facts. In that case we held, that it might be established by parol testimony that Kelley purchased the lot from the negroes, and that as part of the consideration therefor they were not to build their church house on lands in the vicinity of the land owned by Kelley. In that case the court, after announcing the general rule as to the inadmissibility of parol testimony to alter or vary the terms of a written instrument, said: "But the evidence in this case did not contravene that rule. Its tendency was not to contradict, vary or modify

the terms of so much of the contract as was reduced to writing, but to show what the entire contract was.''

That case was correctly decided, but it is clearly distinguishable from the case at bar, and does not conflict with the rule here announced. The language of a deed showing the consideration paid is not contractual; it is a mere recital of a past fact as to what was paid, and is not a promise to pay or an agreement to perform certain mutual covenants or conditions. Parol testimony is always admissible for the purpose of showing what was the real consideration in a deed or other writing evidencing a contract; but it can not be introduced to show that there was no consideration or to show a consideration that would have the effect to render the deed or writing void.

In this case, according to the allegations of appellant's complaint, he is seeking to show by parol testimony certain alleged agreements or assurances, contractual in their nature, and which were to be performed in the future, and which were not expressed in the written contract of lease, and necessarily tended to vary, alter and contradict the terms thereof by showing different obligations and covenants on the part of the appellee from those expressed in the written contract.

In the case of *Hanger* v. *Evins, supra,* we said: ''Written instruments are held to contain everything of a contractual character which the parties finally intended should be binding, regardless of all previous negotiations.''

The view we have expressed on the above issue of law makes it unnecessary to set out the evidence, and to discuss the issue of fact raised by the complaint and answer as to whether or not there was such an oral agreement as appellant alleged. Also the issue as to the statute of frauds passes out.

In a lease from the owner of the property to the lessor of the lessor of appellees is a provision to the effect that the ''lessee agrees not to use the premises for immoral purpose or any other act or acts in violation of

the laws of the United States, the State of Arkansas or the ordinances, rules and regulations of the city of Little Rock. Conceding without deciding that this is a covenant running with the land, yet the leasing of a building for a licensed saloon is not *per se* an immoral purpose in a legal sense. See *Com.* v. *McDonough,* 13 (Allen), Mass. 581. Besides there is no forfeiture declared in the original lease nor the lease in suit for a violation of this provision.

The lease contract being valid, there is no controversy as to the correctness of the amount found due under it for which the court rendered judgment in favor of the appellee.

The judgment dismissing appellant's complaint for want of equity and rendering judgment in favor of the appellee on its complaint for the amount of rents alleged and found to be due and unpaid is in all things correct, and it is affirmed.